(69 Misc. Rep. 383.)

### LONG ISLAND R. CO. v. SHERWOOD et al.

(Supreme Court, Special Term, Queens County.   November, 1910.)

1. EMINENT DOMAIN (§ 166*)—CONDEMNATION PROCEEDINGS — NECESSITY FOR COMPLIANCE WITH STATUTE.

    The stringent character of the power of eminent domain demands that the methods of procedure prescribed for its exercise be strictly, if not inflexibly, followed.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 448–450;  Dec. Dig. § 166.*]

2. RAILROADS (§ 10*)—CONSTRUCTION, MAINTENANCE, AND EQUIPMENT—AUTHORITY OF COMPANY.

    A railroad company has the right to determine for itself the betterments and improvements necessary and convenient for its railroad service, the courts having no supervisory control over the lawful exercise of its discretion in adopting plans for the consummation of such purpose, and it may determine the location upon its own land of its depot buildings, tracks, and track lay-out, and may make its own selection of land which it may deem necessary for its corporate purposes and the extent and location thereof.

    [Ed. Note.—For other cases, see Railroads, Cent. Dig. § 11;  Dec. Dig. § 10.*]

3. EMINENT DOMAIN (§ 169*) — CONDEMNATION PROCEEDINGS — COMPLIANCE WITH STATUTE.

    Where a railroad company seeking to condemn land for railroad purposes has three westerly termini all converging a short distance easterly of a city avenue, the tracks of all three termini crossing at grade such avenue, a much traveled public thoroughfare and one that had been in public use for many years, the company's plan being, not merely the shifting of tracks or putting in of a switch connecting the three routes, but the location of a new right of way over land on the westerly side of the avenue, bounded on all sides by the company's property, the proceedings involved a change of route of all three divisions, and could not be sustained where the company had not complied with Railroad Law (Consol. Laws 1910, c. 49) § 24, relating to changes of route, nor with section 21 relating to contemplated changes in location of a street crossing.

    [Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 461;  Dec. Dig. § 169.*]

Condemnation proceedings by the Long Island Railroad Company against James K. Sherwood and others.   Judgment for defendants.

L. J. Carruthers, for petitioner.
A. Van Wyck, for answering defendants.

MADDOX, J.   Proceeding to acquire lands for condemnation for railroad purposes.

Primarily, that the record may be complete and that defendants may have exceptions to adverse rulings, the same as if taken at the hearing, the objections to the petition herein on the ground of insufficiency are overruled.   The motions to strike out the testimony of the witness Haff as to the resolution, the lease marked "Exhibit 10," and the statutes following viz., chapter 166, Laws 1847, chapter 146, Laws 1853, chapter 152, Laws 1857, and chapter 252, Laws 1861, are denied with an exception to defendants to each of such rulings.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

As said by Judge Willard Bartlett in Bell Telephone Co. v. Parker, 187 N. Y. 299, 303, 79 N. E. 1008, 1009, "the stringent character of the power of eminent domain demands that the methods of procedure prescribed for its exercise shall be strictly if not inflexibly followed," and hence here, if any statutory prerequisite is found wanting, the application must be denied and defendants have judgment. Petitioner has full corporate capacity as a railroad corporation, has constructed and is maintaining its road, has been for many years and is now operating its several lines, routes and branches, and has, by section 24, c. 178, Laws 1834, express authority, in a proper case, of course, to acquire necessary lands perforce of the delegated power to exercise the right of eminent domain. Authority to exercise that right has been and is more specifically provided for and granted in the railroad law, sections 4 (Laws 1892, c. 676) and 7 (Laws 1905, c. 727) of the former law, which were operative when this proceeding was instituted. Petitioner had and has the right to avail itself of such provisions in aid of this application. They were binding upon petitioner for all purposes, and such sections are now numbered 8 and 17, respectively, in the new railroad law, re-enacted this year (Consol. Laws 1910, c. 49). Petitioner has three westerly termini, one in Brooklyn, one in what was formerly Long Island City, and one in Manhattan, with a separate and distinct route from Jamaica to each, the three being known, respectively, as the Atlantic Division (that to Brooklyn), and the Montauk Division and the main line, running to Long Island City, all three converging a short distance easterly of Van Wyck avenue, and the tracks of all three crossing that avenue, a much traveled public thoroughfare and one that has been in public use for many years, at grade.

It must be remembered that there are two separate and distinct railroad crossings there, that of the main line being the most northerly, and that of the Montauk and of the Atlantic Divisions being to the south, the distance between the two crossings being approximately the width, on Van Wyck avenue, of defendants' lands here sought to be acquired, and that in all ten tracks cross the avenue at grade.

Petitioner has introduced electric operation of its trains over several of its branches and routes, including its Atlantic Division, and its main line route west of Jamaica, and operates an express, as well as a local, train service on the two last named, that on the main line also extending to Manhattan. The lands and property here sought to be acquired are on the westerly side of Van Wyck avenue, and include defendants' right, title, and interest in the lands in said avenue extending from petitioner's said main line route south to its Montauk Division route, a course along said avenue of 90 feet, $9\frac{1}{2}$ inches, and said lands are bounded on all sides by petitioner's property.

The evidence establishes that the physical conditions at the Jamaica depot and thereabouts are very much congested; that there is not adequate available land space in that immediate vicinity for the changes, betterments, and general improvements contemplated and embraced in the plan adopted and submitted by the petitioner for the better and more convenient operation of its trains at that place and westerly thereof, for the comfort and safety of its passenger service, for the

better transaction of its business as a common carrier and for the elimination of grade crossings; that the platform facilities at the present depot are insufficient, resulting in the crowding of those waiting to take trains going in either direction and also of passengers in changing from one train to another in continuing their journey; that the trackage space is insufficient, hence causing delay in train service. Petitioner's plan provides for a radical change of its track lay-out and facilities, extending from the present Jamaica depot to a point westerly of Van Wyck avenue, which is about 4,000 feet from said depot, the removal of that depot and office building to a point about 2,000 feet west of its present location, the elimination of all grade crossings over Van Wyck avenue, by means of an overhead steel bridge, with solid floor and with two levels, thus making it possible for trains to cross either over or under the tracks and course of another train while both are crossing said bridge in the same or in opposite directions, in manner as shown on plans marked "Exhibits 4" and "6." That the overhead crossing may be carried out, said plan contemplates the convergence of the tracks of the three routes and lines west of Van Wyck avenue. Such overhead crossing will necessitate the elevation of said tracks to the level of such crossing, and the convergence of said tracks to meet the lines of the bridge proposed will involve the use of the lands which are the subject of this proceeding. It will eliminate the two grade crossings now in use, but only by changing the alignment of the tracks of the three branches from some distance westerly of said avenue, so as to bring them closer together and within the lines of said overhead bridge. An embankment is contemplated for the purpose of reaching the several levels of said bridge, which will require abutments on each side of Van Wyck avenue, with long wing or retaining walls on either end, and, consequently, the use of defendants' lands for such purposes.

One of petitioner's purposes is practically to dispense with steam operation of its trains over its main line and Atlantic Division, substituting therefor, as they have at this time to a very great degree, electric operation, and thus make the Jamaica depot yard its westerly terminal for steam operation, excepting that over the Montauk Division. This will necessitate passengers coming from and going to the east of Jamaica on trains under steam operation to change to or from those electrically operated, except on the trains of the Montauk Division. The elimination, as soon as the same can be reasonably brought about, of grade crossings where trains of cars are run at a high rate of speed, is now the settled policy of the state and of all its municipalities, and that purpose can be brought about only by depressing or elevating such railroad tracks at highway intersections, if overhead then the necessity for an embankment must be recognized. A change of grade is contemplated by the petitioner. This is shown by the plan (Exhibit 2) adopted "by a vote of its directors" as evidenced by the resolution marked Exhibit 1. Section 13 (now number 24) of the railroad law does not require more than a majority vote of the directors; and no other action is called for, as a condition precedent or otherwise, save in the city of Buffalo, the consideration of which is quite unnecessary here. But if the vote and action of petitioner's directors

in that regard is wanting or insufficient, which I do not assent to, compliance with such requirement of section 13 is not a prerequisite to the institution and maintaining of this proceeding; and the necessary directors' action may be had subsequently to the acquisition of the land sought.

A railroad corporation has the right to determine for itself the betterments and improvements necessary and convenient for its railroad service, and the court has no supervisory control over the lawful exercise of its discretion in adopting plans for the consummation of that purpose. The corporation may determine the location upon its own land of its depot buildings, of its tracks and its track lay-out generally, and it may make its own selection of land it may deem necessary for its corporate purposes, the extent and the location thereof. The acquisition of such land under its delegated power of the right of eminent domain is dependent only upon strict compliance with all statutory prerequisites, the establishment of the reasonable necessity therefor for its corporate purposes (Matter of N. Y. C. & H. R. R. R. Co. v. Kip, 46 N. Y. 553, 7 Am. Rep. 385; Matter of Boston & Albany R. R. Co., 53 N. Y. 576; Harlem River & P. R. Co. v. Arnow, 21 App. Div. 636, 47 N. Y. Supp. 438), and, in the absence of special legislative authority (People ex rel. City of Buffalo v. N. Y. C. & H. R. R. R. Co., 156 N. Y. 570, 51 N. E. 312), that such land has not previously been acquired for some public use. But it is likewise true that its right to so acquire land may be made subject to equities existing between the landowner and the corporation, if an unworthy or malicious motive against said owner is shown. Matter of N. Y. C. & H. R. R. R. Co. v. Kip, supra; Harlem River & P. R. Co. v. Arnow, supra. It may use its right of way for any purpose incident to its business and which may contribute to the safe and convenient maintenance and operation of its road.

No change of terminus is involved in the plan here presented. The Long Island City terminal is to continue, since the trains on the Montauk Division, operated by steam motive power, are to continue to arrive at and leave from that terminal depot. The discontinuance of steam passenger operation westerly of the Jamaica depot and the substitution therefor of electric motive power on the other branches do not work a change of termini, so long as their use for railroad purposes generally is continued; and no question is raised here as to the right of the petitioner to operate its trains electrically or by steam motive power, or by both, over any of its lines or branches, or any part thereof. The northerly and southerly boundaries of the land in question here are petitioner's right of way, which are the established routes of its said branches, respectively, each clearly defined and laid out, and presumably originally adopted, located, and surveyed as and for the route of each such lines and the tracks of each division thereupon accordingly laid thereon. The right of way of the Atlantic Division is immediately to the south of and runs, for some distance, along that of the Montauk Division.

The convergence of the tracks upon each of such three lines and divisions westerly of Van Wyck avenue, instead of to the east thereof, as at present, would result for that distance in the establishment of

a new route; and it will also be noticed that a change in the location of the crossing over that avenue is involved. It is not the mere shifting of tracks or the putting in of a switch connecting the three routes; but is the adoption and location of a new right of way over defendants' land, and thus a change of route. It is of no consequence that the tracks of either division will be shifted but a short distance to conform with the lines of the overhead crossing, or that it will involve only a realignment of the tracks to meet that situation. The fact is that there will be a new location of the tracks of all three divisions from the points of their contemplated divergence from the present rights of way, respectively, to the new point or points of convergence, and thence eastwardly to the point or points where they now converge, and a subsequent abandonment of the present grade crossings, which are about 90 feet apart.

A railroad route presupposes the prior legal establishment and adoption of a right of way; and, while a railroad corporation may for some purposes have a right of way free from tracks and operation of trains, there can be no lawful railroad route without such right of way. That route between stations on a railroad is the line or course surveyed and laid out on such right of way and adopted for use for railroad purposes by the corporation. Hence, any divergence of said line beyond the bounds of such right of way, except upon the lands of the corporation, involves, as against abutting owners, a change of route. Of course, this would not be so where additional trackage along an established route was necessary for the purpose of the corporation and the line of the route remained unchanged. Thus I find that there will be a change of route on each of said divisions; and the requirements of section 13 (new number 24) of the railroad law as to the change of route have not been complied with, nor have those of section 11 (new number 21) as to the contemplated change in the location of the street crossing.

It makes no difference that the proposed crossing is to be by means of an overhead bridge, and not at grade. It will be a new crossing over Van Wyck avenue, and section 11 expressly provides that no railroad corporation shall construct "its road  *  *  *  across any street of any city without the assent of the corporation of such city. *  *  *" Such assent has not been shown, but this last provision is not an essential prerequisite to this proceeding. Matter of N. Y. C. & H. R. R. R. Co., 77 N. Y. 248. It may be obtained subsequently to the final order here, but must be had before the corporation can in fact adopt and locate a new crossing over that avenue. People ex rel. Bacon v. Northern C. R. R. Co., 164 N. Y. 289, 58 N. E. 138.

The other questions presented do not call for discussion. The importance of those considered have been recognized and have been discussed at some length. A rather full and complete statement of facts has been prepared to the end that, if the holdings here should on review be found incorrect, the appellate tribunal may direct such judgment and order as such facts call for.

Judgment for defendants.