LONG ISLAND R. CO. v. SHERWOOD et al.

(Supreme Court, Appellate Division, Second Department. November 17, 1911.)

Appeal from Special Term, Kings County.

Condemnation proceedings by the Long Island Railroad Company against James K. O. Sherwood and others. From a judgment of Special Term in favor of defendants (69 Misc. Rep. 383, 127 N. Y. Supp. 85), plaintiff appeals. Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, RICH, and WOODWARD, JJ.

Edward M. Shepard (Louis J. Carruthers, on the brief), for appellant.

Augustus Van Wyck, for respondents Sherwood.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Maddox, J., at Special Term.

BURR, J. (dissenting). Defendant James K. O. Sherwood owns an irregular plot of ground, about 90 feet in width and about 225 feet in depth, situated on the westerly side of Van Wyck avenue, in the borough of Queens and city of New York. Plaintiff seeks to acquire this for railroad purposes. From a judgment in defendants' favor, this appeal is taken.

When these proceedings were taken, the railroad law provided that:

"Subject to the limitations and requirements of this chapter, every railroad corporation, in addition to the powers given by the general and stock corporation laws, shall have power: * * * To take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroad; and to acquire by condemnation such real estate and property as may be necessary for such construction and maintenance in the manner provided by law." Railroad Law (Laws of 1890, ch. 565 [chapter 39, Gen. Laws]) § 4, subd. 2.

But it was also provided that, if a change of route was contemplated:

"Every railroad corporation, except elevated railway corporations, may, by a vote of two-thirds of all its directors, alter or change the route or any part of the route of its road * * * if it shall appear to them that the line can be improved thereby, upon making and filing in the clerk's office of the proper county a survey, map and certificate of such alteration or change. * * * No alteration of the route of any railroad after its construction shall be made, or new line or route of road laid out or established, as provided in this section, in any city * * * unless approved by a vote of two-thirds of the common council of the city." Id. § 13, as amended Laws 1892, ch. 676, and Laws 1897, ch. 235.

The conditions contained in the latter section have not been complied with. The primary question, therefore, is, Does the contemplated improvement in connection with which it is sought to acquire defendant's land involve a change of plaintiff's route, or of any part thereof?

Prior to September, 1910, plaintiff had two westerly termini of the roads owned and operated by it, one in what was formerly known as Long Island City, in the borough of Queens, and one in the borough of Brooklyn. From the former two lines were operated, known, respectively, as the "Main Line," and the "Montauk Division," and from the latter one known as the "Atlantic Division." Since September, 1910, many of the trains which formerly ran to Long Island City have been diverted at a point west of the property in question, and operated through the Pennsylvania tunnels, under the East River, to a point near Thirty-Fourth street, in the borough of Manhattan. This constituted a third terminus. Defendant's property is bounded on the north, west, and south by property belonging to plaintiff. Upon that to the north are laid the Main Line tracks, and upon that to the south those of the Atlantic and Montauk Divisions. The property to the west plaintiff intends to use as a storage yard, and in connection with the relocation of its tracks. At present the three lines operated by plaintiff converge at a point a short distance east of Van Wyck

avenue, and then proceed to Jamaica, which is still further to the east, and which is a general distributing point for all these lines. Van Wyck avenue is now crossed at grade in two separate places, one immediately to the north, and the other immediately to the south, of defendant's property. At these two crossings there are seven distinct tracks over which all trains operated by plaintiff to either of said termini pass. These exceed 400 every day. Van Wyck avenue is a much traveled highway, and at the present time it is protected where crossed by plaintiff's tracks by four sets of gates. Notwithstanding this, it is a very dangerous crossing. Plaintiff proposes to remove the present crossings at grade, and to erect over Van Wyck avenue a double-decked bridge, the tracks upon which will be so arranged that none of them will cross another at grade. Upon this bridge will be placed 13 tracks. Plaintiff proposes, if it acquires defendant's property, to erect thereon a portion of the westerly abutment of said bridge over Van Wyck avenue, and also retaining walls running westerly therefrom. It then proposes to shift the tracks of the Atlantic and Montauk Divisions of its road a short distance to the north, but at no point to a distance greater than 60 or 70 feet. The effect of this will be that all of plaintiff's tracks will cross Van Wyck avenue at a single point, instead of at two points as at present, and upon an overhead bridge, instead of at grade. Defendants contend that this shifting of the tracks amounts to a change of a part of plaintiff's route within the meaning of the railroad law above referred to, and the court at Special Term has so held. This we deem to be error. No change in its termini is contemplated. Its railroad will traverse the same section and serve the same localities, and no others after its plan of improvement is carried out as before. Not only will no property belonging to any one but plaintiff intervene between the tracks as now located and the tracks as it is contemplated to locate them, but all the property now used or occupied by it in that vicinity will continue to be used or occupied for railroad purposes.

We think that the evidence clearly establishes that if plaintiff should maintain its tracks in their present location with reference to the crossings at Van Wyck avenue, but should raise them so as to cross said street upon an overhead bridge, it would be required to construct abutments, retaining walls, and embankments, the latter sloping to the south from the Main Line and to the north from the lines of the Atlantic and Montauk Divisions, so that a space substantially equal to that of defendant's land would be necessarily occupied thereby. A railroad corporation has the right to require additional land by condemnation.

"Where it shall require for any railroad owned or operated by it any further rights to lands or the use of lands for additional main tracks or for branches, sidings, switches, or turnouts * * * or for shortening or straightening or improving the line or grade of its road or any part thereof. Also where it shall require any further rights to lands or the use of lands for filling any structures of its road, or for constructing, widening or completing any of its embankments or roadbeds, by means of which greater safety or permanency may be secured, and such lands shall be contiguous to such railroad and reasonably accessible." Id. § 7, subd. 3, as amended by Laws 1892, ch. 676, and Laws 1905, ch. 727.

Although plaintiff's right of way at this point might be considerably widened in consequence thereof, such additional width would clearly not be a change of route. It would be a mere incident to the change of grade. In this respect this case is to be distinguished from People ex rel. Bacon v. N. C. Ry. Co., 164 N. Y. 289, 58 N. E. 138, which involved not only a change in the place and manner of crossing the highway, but also a change in the route of the road and a disuse of the former right of way, and also from Erie Railroad Co. v. Steward, 61 App. Div. 480, 70 N. Y. Supp. 698, affirmed 170 N. Y. 172, 63 N. E. 118, which involved the retention of its old right of way and the acquisition of a new and straighter right of way through the village of Goshen not contiguous nor even adjacent to the former, but removed some distance therefrom. If all of the property between the south line of plaintiff's present right of way and the north line of defendants' property would be occupied by embankments, abutments, and retaining walls if the tracks were maintained in their present location, and if the property would also be thus occupied after the shift of tracks is made, it is quite clear that the right of way would be of the same width in both cases. If that is so, the exact place upon such right of way where the tracks themselves shall be located is of no consequence. The route has not been changed. 2 Elliott on Railroads, § 930; Stark v. Sioux City & Pacific R. Co., 43 Iowa, 501; Dougherty v. W., St. L. & P. Ry. Co., 19 Mo. App. 419. It is true that the petition states that plaintiff intends to change its steam terminus from Long Island City to Jamaica, but the evidence makes it perfectly clear that all that was thereby intended was to designate Jamaica as the point at which change was to be made from electricity to steam as a motive power. The trains will continue to start from and proceed to the same points, although for a portion of the entire route one motive power will be employed and for the residue another. There was also testimony that plaintiff now had sufficient land to construct two additional tracks without acquiring defendants' lands. But this testimony clearly referred to the possibility of constructing tracks at grade, and not to the tracks when elevated with the building of the necessary bridge therefor over Van Wyck avenue.

Respondents further contend that, even if the contemplated improvement does not constitute a change of route, the necessity for acquiring their lands has not been shown. "Every railroad corporation shall have the power from time to time to make and use upon or in connection with any railroad either owned or operated by it, such additions, betterments and facilities as may be necessary or convenient for the better management, maintenance or operation of any such railroad, and shall have the right by purchase or by condemnation, to acquire any real property required therefor." Id. § 7, as amended by Laws 1892, c. 676, and Laws 1905, c. 727. The burden of proof rests upon plaintiff to establish this but "to a large extent the company must be left, under the delegation of power to it by the state, to determine the extent of its wants, and fix upon the particular location of the lands to be taken, subject to this qualification: That the purposes for which the lands are proposed to be taken must be those for which the

company was incorporated, and strictly within its chartered rights. A reasonable necessity must be shown, or, in other words, there must not be an evident and apparent absence of all occasion or necessity for the property for the legitimate purposes of the corporation." In the Matter of the Petition of the Boston & Albany Railroad Company, 53 N. Y. 574; In the Matter of the New York Central & Hudson River Railroad Co. v. Metropolitan Gaslight Co., 63 N. Y. 326. Neither is the plaintiff in such a proceeding bound to show an immediate necessity for the use of the lands sought to be acquired, if it reasonably appears that increases or developments in the near future may be expected out of which such necessity shall arise. In matter of N. Y. C. & H. R. R. R. Co., 77 N. Y. 248; Matter of Staten Island Rapid Transit Co., 103 N. Y. 251, 8 N. E. 548. If the elevation of plaintiff's tracks is necessary or convenient, and such improvement cannot be made without acquiring additional land, which we think that the evidence establishes, this alone would justify the proceeding so far as the rule of reasonable necessity applies.

But the evidence establishes much more. It is the intention of plaintiff to abandon almost entirely operation of its road by steam from Jamaica west to its present termini. This will necessitate provision at or near Jamaica for storage yards for coal and for locomotives, and facilities for cleaning and storing the latter, as well as the cars and coaches to be used only on the steam road east of Jamaica. At the present time the only facilities which plaintiff has are in its yards at Long Island City. This is 10 miles distant from Jamaica. The court has found that it is not feasible from a railroad standpoint to make up trains in Long Island City, the movement of which trains originates at Jamaica. Plaintiff contemplates the erection of such a storage yard just to the west of defendant's property.

Again, a great majority of the passengers on plaintiff's trains are obliged to transfer at Jamaica, and plaintiff's facilities for handling passengers at the present Jamaica station are inadequate and insufficient. There is no way of increasing its facilities at this point, since its present property is bounded both on the north and the south by open and traveled highways. As part of the general scheme of improvement, of which passing over Van Wyck avenue upon an elevated structure is an essential part, plaintiff also contemplates moving its present station at Jamaica about 2,000 feet to the west, and much nearer to Van Wyck avenue, where the construction of additional tracks and platforms will then be possible. This will necessitate the shifting of the point where the tracks of the three divisions of plaintiff's road converge to a point west, instead of east, of Van Wyck avenue as it is at present, since otherwise it would not be possible to obtain the necessary "jump crossings," so that all east-bound trains would approach the station on the south and all west-bound trains on the north. The alternative to this would be a highly dangerous crossing of trains passing in an opposite direction at grade.

Although the learned court at Special Term has included in its findings one to the effect that necessity has not been shown, we think that in this respect also the court erred. The evidence satisfactorily

establishes a large and extensive improvement, not only in contemplation, but being actually carried out, by plaintiff, the result of which will be a greater accommodation to the public and an improved public service. In connection therewith we think that a reasonable necessity has been shown to exist for the acquisition of defendants' lands.

Respondents contend that, plaintiff having been incorporated under a special act (Laws 1834, c. 178, and the acts amendatory thereof), the power of eminent domain expressly conferred thereby was exhausted when it once located and constructed its tracks. Assuming for the sake of the argument that this is so, the provisions of the railroad law above referred to (sections 7 and 13) apply to roads organized under special acts as well as to those organized under the general railroad law. Erie Railroad Co. v. Steward, 170 N. Y. 172, 63 N. E. 118. Respondents further contend that the proceedings should have been taken in the name of the Atlantic Avenue Railroad Company, the lessor of a portion of the road operated by plaintiff, known as the "Atlantic Division." As the evidence establishes that this portion of the road is now being operated by plaintiff as lessee, if the land sought to be acquired was to be used solely for the purposes of the Atlantic Division of its road, which it is not, we think that the provisions of the railroad law above referred to are sufficiently broad to enable it to maintain this proceeding in its own name. Although it may not own, it is operating, this road. It may be that it would have been proper to join this corporation as a party plaintiff (Railroad Law, supra, § 17, subd. 2; Mayor and Aldermen of Worcester v. Norwich & Worcester Railroad Company, 109 Mass. 103), but it was not necessary to do so.

The judgment should be reversed, and judgment directed for the plaintiff, without costs.

RICH, J., concurs.