LONG ISLAND R. CO. v. SHERWOOD et al.

SAME v. ADIKES.

(Supreme Court, Special Term, Queens County. July 22, 1912.)

1. EMINENT DOMAIN (§ 20*)—RIGHT TO TAKE PROPERTY—RAILROADS—STATUTORY PROVISIONS.

Under Railroad Law (Consol. Laws 1910, c. 49) § 17, giving railroads power to make and use in connection with any railroad owned or operated by it such additions as may be necessary, etc., a railroad operating other roads as lessee was a proper party to apply for the condemnation of land for the uses of such roads.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 59–67; Dec. Dig. § 20.*]

2. RAILROADS (§ 99*)—CROSSING HIGHWAYS—PROCEEDINGS TO CHANGE GRADE—STATUTORY PROVISIONS.

Proceedings for a change of grade at a street crossing were properly conducted in connection with a general plan for acquiring land for additional facilities and depot improvements rather than under the Grade Crossing Law (Railroad Law [Consol. Laws 1910, c. 49] § 91), which provides for a procedure for the making of such a change.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 293–295, 297–304; Dec. Dig. § 99.*]

3. MUNICIPAL CORPORATIONS (§ 873*)—PUBLIC IMPROVEMENTS — POWER TO GRANT AID—RAISING GRADE CROSSINGS.

A contract between a city and a railroad company, which provides for the elimination of certain grade crossings, and for the contribution by the city of a sum toward the expense of such elimination, is not illegal under Const. art. 8, § 10, which prohibits gifts or loans by a city in aid of a corporation, as, by the Grade Crossing Law (Railroad Law [Consol. Laws 1910, c. 49] § 94), which directs that one-half or one-fourth of the expense of making grade crossing changes be borne by the city, the elimination of grade crossings is recognized as a municipal purpose.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1845–1850; Dec. Dig. § 873.*]

4. MUNICIPAL CORPORATIONS (§ 873*) — PUBLIC IMPROVEMENTS — POWER TO GRANT AID—ELEVATION OF TRACKS.

Where improvements by a railroad were extensive, and it was impossible to tell exactly how much would be expended in raising a grade, an agreement by a city in advance to pay a stated sum toward the expense of elevating the tracks was not a misapplication of city funds.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1845–1850; Dec. Dig. § 873.*]

5. RAILROADS (§ 99*)—RIGHT TO MAINTAIN BRIDGES—PERPETUITY OF CONTRACT—CHARTER PROVISIONS.

Where the franchise of a railroad company to cross a city street at grade had been in existence for a long time and was in perpetuity, a contract giving the railroad the right to forever maintain bridges, which would abolish the grade crossing, was a mere assent to the elevation of the tracks, and not a new franchise in violation of Greater New York Charter (Laws 1901, c. 466) § 73, which forbids the granting of such a franchise for longer than 25 years.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 293–295, 297–304; Dec. Dig. § 99.*]

6. CONTRACTS (§ 137*)—EFFECT OF ILLEGAL PROVISIONS.

Provisions of a contract between a city and a railroad which illegally provide for the closing of certain streets will not render void other and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

legal provisions, providing for the elevation of the railroad's tracks, and the giving of city aid therefor.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 701–712; Dec. Dig. § 137.*]

7. MUNICIPAL CORPORATIONS (§ 875*)—PUBLIC IMPROVEMENTS—AID OF TRACK ELEVATION—CONTRACT—COMPTROLLER'S CERTIFICATE.

Though the city comptroller failed to attach to an agreement of the city with a railroad company, giving assent and aid to the elevation of tracks, the certificate required by Greater New York Charter (Laws 1901, c. 466) § 149, providing that no claim against the city treasury shall be paid which does not contain the comptroller's certificate that it is just and reasonable, and the city may by proper proceedings prevent a recovery of the money to be paid, it will not render void the assent given.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1852; Dec. Dig. § 875.*]

8. EMINENT DOMAIN (§ 169*) — PROCEEDINGS — OBTAINING PUBLIC SERVICE COMMISSION'S CONSENT—TIME.

Though the consent of the public service commission to a proposed change in the grade of a railroad at a street crossing was not obtained as required by Public Service Commissions Law (Consol. Laws 1910, c. 48) § 53, until after commencement of trial in the condemnation proceedings, a dismissal of the case was not necessary, as the obtaining of such permission is not one of the facts required to be set forth by Code Civ. Proc. § 3360, prescribing the facts to be alleged in a petition for condemnation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 461; Dec. Dig. § 169.*]

9. EMINENT DOMAIN (§ 56*)—EXERCISE OF POWER—NECESSITY FOR APPROPRIATION.

Where a railroad company sought by the building of a new depot to accomplish many improvements necessary for an increased traffic as well as by elevated cross-overs to diminish danger and increase speed, and its plans necessitating the taking of certain property by condemnation will better produce these results than plans submitted by the person whose property is sought to be taken, and which do not include that property, there is a reasonable necessity which will justify the taking.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 147–160; Dec. Dig. § 56.*]

10. EMINENT DOMAIN (§ 66*)—PROPERTY SUBJECT TO APPROPRIATION—EFFECT OF PUBLIC SERVICE COMMISSION'S DETERMINATION.

Where plans for the building of a railroad depot and the elevation of its tracks were submitted to the public service commission and approved by it, the court cannot determine that those plans were wrong, and that different plans suggested by a property owner whose property would be taken by one method, and not by the other, should be adopted.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 165–167; Dec. Dig. § 66.*]

Condemnation proceedings by the Long Island Railroad Company against J. K. O. Sherwood and others. Same against John Adikes. Judgment for plaintiff.

See, also, 147 App. Div. 895, 131 N. Y. Supp. 772; 147 App. Div. 908, 133 N. Y. Supp. 1151.

Joseph J. Keany (Louis J. Carruthers, of counsel), for plaintiff. Augustus Van Wyck, for defendants.

CRANE, J. The principal facts in these cases are fully set forth in the opinions upon the first trial, and appeal in the Sherwood Case. 69 Misc. Rep. 383, 127 N. Y. Supp. 85; 147 App. Div. 895, 131 N. Y. Supp. 772; 205 N. Y. 1, 98 N. E. 169. The Adikes Case has not before been tried, but, except as to the question of necessity, involves the same questions and objections that arise upon the retrial of the Sherwood Case. These cases, therefore, have been submitted largely upon the same testimony and presented upon the same briefs, and this decision will, therefore, apply to both. Upon this rehearing of the Sherwood Case after reversal in the Court of Appeals, some additional testimony has been given and a few new points raised. I shall first touch upon these objections raised by the defendants which are applicable alike to each other.

[1] The objection that the improvements of the Long Island Railroad Company at Jamaica call for a change of route has been disposed of on the appeal adversely to the defendants. Likewise, the claim that this proceeding should have been instituted by the Nassau Electric Railroad or the Brooklyn & Montauk Railroad has been directly touched upon by Mr. Justice Burr in his dissenting opinion in the Appellate Division above cited, and is not tenable under section 17 of the present Railroad Law (Consol. Laws 1910, c. 49), which gives to every railroad power to make and use in connection with any railroad owned or operated by it such additions as may be necessary, etc. The plaintiff as lessee is operating both of these roads, and may make this application pursuant to said section.

[2] Although the plans sought to be carried out by this application provide for a change of grade at Van Wyck avenue, the proceedings to accomplish this have not been conducted under the Grade Crossing Law (section 91 of the Railroad Law), but in connection with the general plan and scheme for acquiring land for additional facilities and the making of extensive changes for depot improvements. This is permissible according to People ex rel. Town of Colesville v. Delaware & Hudson R. R. Co., 177 N. Y. 337, 69 N. E. 651.

[3] The defendants insist that the consent of the city authorities was necessary to this change in grade crossing, and that the proper consent has not been given. Section 21 of the Railroad Law. It might be sufficient to answer this contention in the words of Mr. Justice Maddox as contained in his opinion at Special Term on the first trial:

"Such assent * * * is not an essential prerequisite to this proceeding. Re N. Y. C. & H. R. R. R., 77 N. Y. 248. It may be obtained subsequent to the final order herein, but must be made before the corporation can in fact adopt and locate a new crossing over that avenue. People ex rel. Bacon v. N. C. R. Co., 164 N. Y. 289 [58 N. E. 138]."

But since the first trial, and on the 21st day of July, 1911, the Long Island Railroad Company obtained the assent of the city of New York to this cross-over or change of grade at Van Wyck avenue according to its plans and specifications, which is evidenced by a contract executed on that day between the city and said company. Defendants press the illegality of this contract as the reason for nulli-

fying such assent, giving numerous grounds which I shall deal with in the order stated.

As the contract is quite lengthy, having reference to many streets and crossings, it is quite sufficient for this point to say that it provides for the contribution by the city of the sum of $575,000 toward the cost of eliminating the grade crossings mentioned and gives to the railroad or its successors the right to maintain forever the structures to be erected in connection with the work contemplated and provided for in the agreement.

(a) This contract, the defendants say, is illegal because it appropriates money and lends the credit of the city to a railroad corporation in violation of section 10 of article 8 of the state Constitution. The elimination of grade crossings is a municipal purpose recognized as such in the Grade Crossing Law, which in section 94 of the Railroad Law directs that one-half or one-quarter, as the case may be, of the expense be borne by the city in making grade crossing changes as herein provided.

(b) It is said that the city has contracted away its police power or right to control and regulate the streets and crossings, and that any contract having this effect is void according to Northern Pacific R. R. Co. v. State of Minnesota, 208 U. S. 583, 28 Sup. Ct. 341, 52 L. Ed. 630, but wherein this agreement contracts away any such powers the defendants fail to state. After carefully reading the contract, I am unable to find any attempted limitation placed upon the so-called police power of the state.

[4] (c) This contract, it is said, appropriates the money of the city of New York for other purposes than eliminating grade crossings. This same claim has been set forth and answered under objection "a." The money according to the contract is contributed by the city "as its proportion of the cost of eliminating the grade crossings hereinbefore mentioned, the widening of the several bridges and all the other details included in the improvements covered by this agreement." All the matters and details covered by the agreement relate and pertain to the streets and highways of the city of New York and the crossing of them by the railroad. The proposed change by the construction of bridges is to avoid the grade crossings. The contribution of the money is for a municipal purpose. In proceedings to change grade crossings taken under section 91 of the Railroad Law, the one-quarter cost of the change may be readily ascertained, but in extensive improvements such as here contemplated, made under powers conferred by other provisions of the Railroad Law, and not in accordance with the grade crossing sections, it may be impossible to tell exactly how much is to be expended in simply raising the grade over the street, and it would not, therefore, be a misapplication of the funds for the city in advance to agree to pay a stated sum toward the expense of elevating the tracks. Such an application of the city's money was recognized and acted upon under the Atlantic Avenue Improvement Act (chapter 499 of the Laws of 1897), and passed upon without disapproval by the Court of Appeals in Matter of Long Island Railroad, 189 N. Y. 428, 82 N. E. 443, and Long Island R. R. v.

City of New York, 199 N. Y. 288, 295, 92 N. E. 681. The legality of a similar application of city funds was determined in Hopper v. Wilcox, 135 N. Y. Supp. 384, affirmed in the Court of Appeals, June 29, 1912 (Admiral Realty Co. v. City of New York, 99 N. E. 241).

[5] (d) The fact that the contract gives to the railroad company the right to forever maintain these bridges is said to be in violation of section 73 of the Greater New York charter (Laws 1901, c. 466), as a ʃfranchise cannot be now granted for longer than 25 years. It may be very questionable whether section 73 applies to the crossings above a city street as distinguished from operation upon a city street, but that it cannot apply to this case is quite evident when we remember that the tracks of the Long Island Railroad have for a long time crossed over Van Wyck avenue at grade, and that this franchise was in perpetuity. It is for the benefit of the city that grade crossings be abolished, and it is not the granting of a new franchise within the meaning of section 73 of the charter when assent is given to the raising of the tracks from the street level to an overhead bridge construction. The fact that numerous tracks are thus assembled and cross at one point where heretofore they crossed at grade at different points can make no difference. The assent which is given is to the elevation of the tracks, the abolition of grade crossings, and not the granting of a new franchise, within the meaning of section 73 of the charter.

[6, 7] (e) If this contract improperly provides for the closing of certain streets, it can in no way affect the other and legal provisions; and, if (g) the comptroller has failed to attach to the agreement of the city the certificate required by section 149 of the charter, it may, in proper proceedings, prevent the recovery of the money to be paid, but will not render void the assent which has been given. That the city may not be able to carry out all that it has undertaken will not prevent the railroad company from insisting upon fulfillment of part.

[8] When this case was on trial, the objection was made by these defendants that the consent of the public service commission to the change contemplated and proposed at Van Wyck avenue had not been obtained in accordance with section 53 of the Public Service Commissions Law (Consol. Laws 1910, c. 48). I then stated it as my opinion that this was a prerequisite, and that I would hesitate to grant judgment in this case when it might be that such consent would not be given, and the whole plan becomes abortive, and the taking of this property unnecessary. Erie R. R. v. Steward, 170 N. Y. 172, 184, 63 N. E. 118. In my judgment section 53 was broad enough to require the permission and approval of the commission "to the exercise of any right under any provision of the Railroad Law." Thereafter, and before this case was finally submitted to me for decision, the Long Island Railroad Company, upon petition and after notice and public hearing, obtained from the public service commission its permission for the construction of the changes contemplated by the plans here in question. We have deemed it just to all parties to permit the railroad company to introduce in evidence the resolutions of the public service commission and the petition and proceedings upon which they were

granted, and will give to the defendants an exception overruling their objections to my so doing. That the consent of the public service commission was not obtained before the commencement of these proceedings and alleged and set forth in the petition does not require a dismissal of the case. The fact that it has been obtained and so appears is sufficient. L. I. R. R. v. Sherwood, 205 N. Y. 1 at page 22, 98 N. E. 169. It is not one of the allegations required to be set forth specifically by the provisions of the Code. Section 3360. Or it may be that section 53 means that the work of construction shall not be begun until approval is obtained, and does not apply to an application such as this.

[9] After hearing the testimony in this case, I stated from the bench that upon that branch of the case involving the reasonable necessity for the use of the properties sought to be taken herein I should decide in favor of the plaintiff. The plans for the new depot at Jamaica seek to accomplish many improvements made necessary by the increase in traffic, the change of the termini, and the two kinds of motive power now in use. Jamaica depot has heretofore been used partially by through trains and partially by locals, but hereafter all transfers will be made at Jamaica to the steam trains to and from various parts of the island, and only electric trains will carry passengers to and from Brooklyn, Long Island City, and Manhattan. By increase in the number of tracks and the platform facilities these local electric trains will be able to put off and take on passengers alongside of the connecting steam trains, while by means of the elevated cross-overs, such as that at Van Wyck avenue track crossings, at grade will be abolished, diminishing danger and increasing speed.

To bring about these improvements, necessary changes in the number and location of tracks must be made, together with a change in grade by elevating some of them. The plans adopted by the plaintiff take the Sherwood property for abutments and bridge or trestle crossing over Van Wyck avenue, while a portion of the Adikes property is taken for a freight track, or for embankments for tracks. The defendant Sherwood has submitted a plan made by Engineer Hensel showing how those purposes might be accomplished without taking the Sherwood property, or all of it, but by this track arrangement all fouling points or track crossings at grade would not be abolished, and curvatures and grades would be increased. The question to be determined in these matters is not whether it is physically possible to construct the road according to a different plan, but whether or not the one adopted is unreasonable to carry out the purpose intended. The testimony shows that from a railroad operator's point of view, bearing in mind the dangers to be obviated, and the passengers' facilities to be obtained, that the plans adopted by the railroad are better than those made and suggested by Hensel. Therefore, as I heretofore stated, there appears to be a reasonable necessity within the law, as laid down by the cases, for the taking of the Sherwood property. Matter of Boston & Albany R. R. Co., 53 N. Y.

574; Matter of N. Y. C. & H. R. R. R. v. Met. Gas Light Co., 63 N. Y. 326.

[10] The objection to the taking of the Adikes property is that it is intended to be used largely for embankments, whereas, if retaining walls were constructed, much of the property need not be taken. Is it for the court to determine in extensive improvements, such as here planned, that a retaining wall should be built instead of an embankment? The same objection in part has been made to the structure on the Sherwood property. Section 53 of the Public Service Commissions Law provides that no railroad shall exercise any right under any provision of the Railroad Law or of any other law without first having obtained the permission and approval of the commission. This, of course, in a case like this, must mean the approval of its plans and methods, the danger or propriety of which can be readily ascertained by the commission through its staff of assistants and engineers or by that method of investigation not open to the courts, as its investigations and hearings are not bound by the technical rules of evidence. Section 20. The petition for the approval of the commission in this case carried annexed to it the plans of this improvement showing embankments, cross-overs, etc., a public hearing was had, and approval given. Unless, therefore, it appears that the taking of property is wholly arbitrary and clearly unnecessary, the court should not attempt to change the methods and means for carrying out a necessary improvement which has been approved by the public service commission.

I therefore find that the application of the plaintiff has been legally made, the necessary assets obtained, and the taking of the property reasonably necessary. When this case was commenced at the April term, a motion was made under section 3360 of the Code of Civil Procedure for immediate possession, but I refused to decide the matter until I had heard all the testimony and made my decision upon the merits, in view of the many objections made to the legality of the preliminary steps required of the plaintiff. Now, however, I have decided this matter in favor of the plaintiff, and believe that the public interests will be prejudiced by further delay. The order may therefore be presented in accordance with the provisions of this section for immediate possession.