Erie Railroad Company, Appellant, *v.* Mary Anna Steward et al., Respondents.

1. Appeal — When Order of Appellate Division Reversing a Judgment on Questions of Fact and Law Is Reviewable in the Court of Appeals. An appeal from an order of the Appellate Division reversing a judgment upon questions of fact and law and ordering a new trial is reviewable in the Court of Appeals, when there is no controverted fact upon which the decision of the question of law depends and there are no questions of fact to be resettled upon a new trial of the case to affect the question of law involved.

2. Railroads — The Right of Eminent Domain Can Be Exercised Only in Pursuance of Statutory Authority. To justify the taking of land for railroad purposes *in invitum* the owner, not only the necessity for the land must exist, but that necessity must be recognized by statute and be provided for in some plain grant of power, and when the right to exercise the power is claimed, the corporation must make out a case within the statutory delegation of power.

3. Power of Reorganized Railroad Corporation to Change Completed Route Conferred and Limited by Charter of Original Company and Subsequent Statutes. A railroad company organized in 1895 under the Stock Corporation Law (L. 1892, ch. 688, § 3) as a successor, through intermediate reorganizations, of a railroad company created by and organized under a special act of the legislature, has only the powers possessed by the original company as the same may have been amplified, added to or affected by subsequent legislation, and when the original company has exercised all the power of eminent domain delegated to it by its charter in acquiring the land necessary for the construction and operation of its railroad between the terminal points thereof upon the line designated as required in said statute, such power is necessarily exhausted and its successor cannot change the route of the railroad and acquire land by condemnation for that purpose unless the authority to make the change has been expressly conferred by some subsequent statute.

4. New Route — Not Authorized by Subdivision 2 of Section 4, or by Subdivisions 3 and 4 of Section 7 of the Railroad Law. The provisions of the Railroad Law (L. 1892, ch. 565, § 4, subd. 2, and § 7, subds. 3 and 4) authorizing a railroad corporation to acquire by condemnation lands necessary for various purposes, do not empower it, when having a completed road through a village, to condemn lands for a new and straighter line through another part of the village to be used as a " short cut " and as an additional main line.

5. CHANGE OF ROUTE IN VILLAGES — APPROVAL OF VILLAGE TRUSTEES MUST BE OBTAINED.   A change of the route of a railroad through a village cannot be made or a new line or route laid out and land acquired for such purposes, under section 13 of the Railroad Law, unless such change be first approved by a two-thirds vote of the trustees of the village, since the language of the statute is mandatory upon the subject.

*Erie R. R. Co.* v. *Steward*, 61 App. Div. 480, affirmed.

(Argued January 13, 1902; decided March 7, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered June 12, 1901, reversing a judgment in favor of plaintiff entered upon the report of a referee and granting a new trial.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Charles F. Brown, Henry Bacon* and *Joseph Merritt* for appellant.   The court has jurisdiction upon this appeal to review the determination of the Appellate Division. (*Otten* v. *M. R. Co.*, 150 N. Y. 395 ; *Benedict* v. *Arnoux*, 154 N. Y. 715 ; *Hirschberg* v. *Fitzgerald*, 157 N. Y. 166 ; *Griggs* v. *Day*, 158 N. Y. 1 ; *O'Brien* v. *E. R. R. Co.*, 161 N. Y. 534.)   Where a reasonable necessity is shown, a reasonable discretion must be exercised by the railroad company, and the court will not interfere to control that discretion, unless it will result in great injury or is influenced by some improper motive. (*N. Y. & H. R. Co.* v. *Kip*, 46 N. Y. 546 ; *Matter of B. & A. R. R. Co.*, 53 N. Y. 574 ; *N. Y. C. & H. R. R. R. Co.* v. *M. G. L. Co.*, 5 Hun, 201 ; 63 N. Y. 326.)   The Erie Railroad Company has the power to acquire the lands in question. (*Matter of S. I. R. T. Co.*, 103 N. Y. 251 ; *Matter of L. I. R. R. Co.*, 143 N. Y. 67 ; *N. Y. C. R. R. Co.* v. *Johnson*, 67 Barb. 426 ; *N. Y. & N. H. R. R. Co.* v. *Welsh*, 143 N. Y. 411 ; *Matter of N. Y., N. H. & H. R. R. Co.* v. *France*, 30 N. Y. S. R. 367 ; *N. Y. C., etc., Co.* v. *C. I. Works*, 28 N. Y. S. R. 64 ; *N.*

*Y., L. & W. R. R. Co.* v. *Scheu,* 33 Hun, 148; 98 N. Y. 664; *Matter of N. Y. & H. R. R. Co.* v. *Kip,* 46 N. Y. 546.) The approval of the change of route by the trustees of the village of Goshen is not a condition precedent to the maintenance of this proceeding. (*Matter of N. Y. C. & H. R. R. R. Co.,* 77 N. Y. 250; *Matter of S. R. T. Co.,* 38 Hun, 353.) The order made in the case of *People ex rel. Steward* v. *Goshen Railroad Company* (160 N. Y. 202) is not a bar to the maintenance of this proceeding. (*Webb* v. *Buckelew,* 82 N. Y. 555; Herman on Estoppel, 43, § 49; *Wheeler* v. *Ruckman,* 51 N. Y. 391; *Maloney* v. *Nelson,* 158 N. Y. 351; *Genet* v. *D. & H. C. Co.,* 163 N. Y. 178; *Vaughan* v. *O'Brien,* 57 Barb. 491; *People* v. *Dalton,* 29 Misc. Rep. 154; *Campbell* v. *Consalus,* 25 N. Y. 613; *People* v. *Johnson,* 38 N. Y. 63; *Belden* v. *State,* 103 N. Y. 1; *Bell* v. *Merrifield,* 109 N. Y. 202; *Lewis* v. *O., N. & P. Co.,* 125 N. Y. 341.)

*Howard A. Taylor* and *Origen S. Seymour* for respondents. The plaintiff has long since exhausted the power to locate and construct, add to or alter, the route of its railroad, or any part thereof, unless it proposes a plan within the purview of section 13 of the Railroad Law. (*Matter of P. Bridge Co.,* 108 N. Y. 483; *H. & D. C. Co.* v. *N. Y. & E. R. R. Co.,* 9 Paige, 323; *B. C. R. R. Co.* v. *B. C. R. R. Co.,* 32 Barb. 358; *Mason* v. *B. C. & N. R. R. Co.,* 35 Barb. 373; *People* v. *N. Y. & H. R. R. Co.,* 45 Barb. 73; *Negus* v. *City of Brooklyn,* 10 Abb. [N. C.] 180; *N. Y. & A. R. R. Co.* v. *N. Y. & W. S. R. R. Co.,* 11 Abb. [N. C.] 386; *Brigham* v. *A. R. R. Co.,* 83 Mass. 316; *L. M. R. R. Co.* v. *Naylor,* 2 Ohio St. 235; *Moorehead* v. *L. M. R. R. Co.,* 17 Ohio, 340.) The short cut cannot be built under section 13 of the Railroad Law. (*N. Y. C. & H. R. R. R. Co.* v. *Aldridge,* 135 N. Y. 83; *Matter of S. B. R. R. Co.,* 119 N. Y. 141; *People* v. *B., F. & C. I. R. R. Co.,* 89 N. Y. 75.) The plaintiff has no power

to construct a four-track railroad. (*Parker* v. *E., C. & N. R. R. Co.*, 165 N. Y. 274; *Bush* v. *D., L. & W. R. R. Co.*, 166 N. Y. 210.) The projected railroad at Goshen was not to be a switch or turnout; nor are the Steward lands contiguous to the present road. (*People ex rel.* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 570; *Green* v. *Smith*, 160 N. Y. 533; *C. I. Co.* v. *Mayor, etc.*, 53 App. Div. 260; *Martin* v. *Home Bank*, 160 N. Y. 190; *C. C. Ry. Co.* v. *M. S. R. R. Co.*, 16 App. Div. 229; *N. Y., L. E. & W. Ry. Co.* v. *E. R. R. Co.*, 31 App. Div. 378; *Bird* v. *R. R. Co.*, 8 Rich. Eq. 46; *Akers* v. *U. N. J. T. & C. Co.*, 43 N. J. L. 110; *People ex rel. G. R. R. Co.*, 160 N. Y. 202; *People ex rel.* v. *R. R. Comrs.*, 4 App. Div. 259.) The general phrases in the Railroad Law relied upon by the other side are none of them authorizations for the construction of this railroad. (*R. & S. R. R. Co.* v. *Davis*, 43 N. Y. 137; *Beekman* v. *S. & S. R. R. Co.*, 3 Paige, 45; *Bloodgood* v. *M. & H. R. R. Co.*, 18 Wend. 9; *Matter of N. F. & W. R. R. Co.*, 108 N. Y. 375; *B. & N. Y. R. R. Co.* v. *Brainard*, 9 N. Y. 100; *Matter of Townsend*, 39 N. Y. 171; *Matter of R. & S. R. R. Co.* v. *Davis*, 43 N. Y. 187; *Matter of N. F. & W. R. R. Co.*, 108 N. Y. 375; *Matter of N. Y. & H. R. R. R. Co.* v. *Kip*, 46 N. Y. 546; *Matter of N. Y. C. & H. R. R. R. Co.*, 67 Barb. 426.) There is no need for the railroad. The private economies of a railroad corporation are not identical with the public need. (*Matter of A. & W. R. R. Co.*, 37 App. Div. 162; *P. R. R. Co.'s Appeal*, 93 Penn. St. 150.) It is *res adjudicata* as between plaintiff and defendants that there is no need for the railroad. (*Castle* v. *Noyes*, 14 N. Y. 329; *Cheney* v. *Patton*, 144 Ill. 373; *Claflin* v. *Fletcher*, 7 Fed. Rep. 851; *Lovejoy* v. *Murray*, 3 Wall. 1; *People ex rel.* v. *Bd. R. R. Comrs.*, 4 App. Div. 259; *Matter of R. E. R. R. Co.*, 123 N. Y. 356; 2 Black on Judg. §§ 623, 625; *Matter of U. E. R. R. Co.*, 112 N. Y. 61; *P. P. & C. I. R. R. Co.* v. *Williamson*, 91 N. Y. 552; *Barber* v. *Town of New Scotland*, 64 App. Div. 229; *Foy* v. *County of West-*

*chester*, 168 N. Y. 180.)   The right to condemn falls either with the lack of statutory power to construct or lack of need for the road.   (*Irvine* v. *A. A. R. R. Co.*, 10 App. Div. 560; *Buchholz* v. *N. Y., L. E. & W. R. R. Co.*, 148 N. Y. 640; *Matter of R. E. Ry. Co.*, 123 N. Y. 351; *C. C. T. Co.* v. *K. Ry. Co.*, 153 N. Y. 540; *Matter of C. W. W. Co.*, 32 App. Div. 54.)

GRAY, J.   In this proceeding the Erie Railroad Company seeks to acquire certain lands in the town of Goshen, against the will of the defendants, their owners, upon the allegation that they are necessary for the purpose of laying two additional main tracks, from a point westerly of the village of Goshen to a point easterly of the said village and upon a different alignment from that upon which its present main tracks are laid.   The application was opposed by the owners; who denied the allegations of the petition relating to the necessity for the lands, or to their being required for a public use.   Upon the report of a referee, before whom the trial of the issues was had, a judgment was entered in favor of the plaintiff; which authorizes it to take the property in question, upon making such compensation therefor as should be ascertained by commissioners of appraisal therein appointed for that purpose.   Upon the defendants' appeal to the Appellate Division, in the second department, the judgment recovered by the plaintiff was reversed, upon the questions of fact and of law in the case and a new trial was ordered.   From this order the plaintiff appeals to this court and, as we consider that there is no controverted fact in this case, upon which the decision of the one question of law depends, we have determined to entertain the appeal.   There is no conflict in the evidence as to the plaintiff's need of an increase in its main track accommodations.   There is a dispute as to the relative cost of meeting the plaintiff's needs by the widening and regulating of the embankment, upon which the present main tracks are laid, and of building the additional tracks in the

way proposed; but that is not at all material with reference to the question of power involved in the application of the plaintiff. Upon the undisputed facts the plaintiff requires, and is conceded to be entitled to have, more land for additional tracks and the sole question of law arises, unaffected by what dispute there may be in the evidence as to the best way for the plaintiff to accomplish its ends, whether it is empowered by law to construct the two additional main tracks, as proposed, over the defendants' lands without their consent. There are no questions of fact, to be resettled upon a new trial of the case, which affect the question of law involved, and, therefore, the terms of the reversal by the Appellate Division do not deprive us of the right to entertain this appeal.

The situation of the plaintiff's railroad, in the town of Goshen, is that it enters and leaves the village of Goshen upon a long and irregular curve, of somewhat more than three miles in length. The grade at that point is undulating, varies considerably, and auxiliary engines, called "pushers," have to be maintained to haul trains over the distance, at a great expense to the company. In order to obviate this expenditure and to have two additional tracks as a part of the main line, upon which the freight trains of the road could be moved, with greater facility and convenience, the plaintiff filed a map and laid out a new line or route, of something less than three miles in length, over the lands of the defendants and of others, which began at a point on its present main line west of the village of Goshen and proceeded, in very nearly a straight line, to a point upon the main line east of the village. The plan, thus, proposes the retention of the present main line and the construction and operation of a new line, with two tracks, and the plaintiff will traverse the village of Goshen with two lines of railroad. The line, as it exists, was constructed by the New York and Erie Railroad Company; which was organized by a special act of the legislature, in 1832, (Chap. 224, Laws of 1832), and its franchises and privileges have descended to, and are vested in, the plaintiff.

12

It is now the purpose of the plaintiff to construct two additional tracks upon its entire eastern, or New York division; in order that, with a completed system of four tracks, its operations may be better, and more economically, conducted, and the new line, or route, now planned through Goshen, is intended to form part of that system. Its right to do this, and to exercise the power of eminent domain in the taking of land for the accomplishment of its purpose, depends upon the existence of any legislative authorization to that effect. This question is one which the defendants are entitled to raise, in objection to the application of the plaintiff. They have the right to require the plaintiff to point out where the power of eminent domain is conferred upon it, through the exercise of which their lands are to be condemned. To justify the taking of land, *in invitum* its owner, for railroad purposes, not only the necessity must exist; but that necessity must be recognized by statute and be provided for in some plain grant of power. That a railroad purpose usually subserves a public use is true; but the precise authority to take the land desired, by condemnation proceedings, must always be found and whether it exists and whether it is available, in the case presented, are questions for judicial determination. The courts are to decide whether the uses, for which the land is demanded, are, in fact, public and within the intendment of the statute. The delegation by the legislature of its power of eminent domain to railroad corporations is justified, as a constitutional measure, upon the ground that their franchises are for a public use and that in accommodating the public, by furnishing transportation for passengers and freight, they perform a public duty and are invested with a *quasi* public character (*Buffalo & N. Y. City R. R. Co.* v. *Brainard,* 9 N. Y. 100; *Rensselaer & Saratoga R. R. Co.* v. *Davis,* 43 N. Y. 137); but when the right to exercise the power is claimed, the corporation must make out a case within the statutory delegation.

The plaintiff is the successor of the New York and Erie Railroad Company through intermediate reorganizations. Upon its organization, in 1895, under the third section of the

State Corporation Law, it acquired all the rights, franchises and privileges, which were possessed and enjoyed by its immediate predecessor, The New York, Lake Erie & Western Railroad Company, upon whom had devolved by law those of the Erie Railway Company; which, in turn, had been invested with those of the New York and Erie Railroad Company, by chapter 160 of the Laws of 1860. Thus, the powers possessed by the plaintiff are those of the original company, as the same may have been amplified, added to, or affected, by subsequent legislation. The General Railroad Act of 1850 applied to the New York and Erie Railroad Company; as the present Railroad Law of 1892 applies to the plaintiff in its grant of powers. No power to change the plaintiff's line, or route, can be found in, or inferred from, the provisions of the original charter for the railroad. The charter of the New York & Erie Railroad Company, by the fourth section, required the directors, after their examinations and surveys had been completed for a railroad from the city of New York to Lake Erie, to designate the line of its road, and provided that " the line, course, or way, so selected and certified, shall be deemed the line, course, or way on which the said corporation shall construct, erect and build," etc. By sections 9 and 11, the corporation was empowered to acquire land for accomplishing the objects of its incorporation and the construction of a " single, double or treble railroad or way * * * on the line, course, or way designated by the directors, as aforesaid, as the line, course and way whereon to construct, erect, build and make the same." When the company had located its line of road between its terminal points, pursuant to the requirement of its charter, it was concluded by that location and no change of its route could thereafter be made, in the absence of legislative authority. The effect of the designation by the directors of the line of the road was the same as if the line had been described in the charter and the operation by the corporation of a railway limited thereto. (*Hudson & Delaware Canal Co.* v. *N. Y. & Erie R. R. Co.*, 9 Paige, 323, 328; *Mason* v. *Brooklyn City & N. R.*

*R. Co.*, 35 Barb. 373, 381; *Matter of Poughkeepise Bridge Co.*, 108 N. Y. 483; Wood on Railroads, sec. 271.) It was with reference to the construction of the line, or way, as, and when, designated by the directors, that the power of eminent domain was delegated to the corporation, to be exercised in the acquisition of private lands and that power, once exercised was, necessarily, exhausted. The power to change the route of a railroad was first conferred on railroad corporations by chapter 404 of the Laws of 1847, and related to cases where the railroad had not been constructed. In the General Railroad Act of 1850 and in other acts, passed between that time and the enactment of the present Railroad Law, provision was made for the relief of railroad corporations under conditions specified therein, in cases where an alteration of the route, or a new line, was desired.

The plaintiff relies upon certain of the provisions of the Railroad Law, as enabling it to take private land for the accomplishment of its present purpose. The first of the provisions, which are referred to, is contained in subdivision 2 of section 4 of the Railroad Law and confers the power " to take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its railroad ; and to acquire by condemnation such real estate and property as may be necessary for such construction and maintenance in the manner provided by law," etc. The section had provided that " subject to the limitations and requirements of this chapter, every railroad corporation, in addition to the powers given by the general stock and corporation laws, shall have power," as specified in nine subdivisions ; which, by a regular procession of ideas, cover the needs of a corporation organized for the operation of a railroad, from a power to survey lands, as an initial step, down through powers necessary for, or relating to, the construction of the road, under varying circumstances, the construction of buildings, and matters of transportation, to a power to hold land in any other state, or stock in any foreign corporation, owning lands in another state. This was

an enumeration of the general powers which railroad corporations would possess and which might be exercised, within the limitations of the chapter. The power to acquire by condemnation real estate necessary for " construction and maintenance " had been already exercised, under the original charter of the New York and Erie Railroad Company. When it is sought to exercise the power given by subdivision 2 for an especial purpose, not among those generally enumerated in the section, the applicant must show that it is necessarily and clearly comprehended within one, or the other, of them. That a change of a part of the route, by a diversion of the tracks of a main line over a " short cut " across another part of the village, is within the general powers conferred upon the corporation, I do not believe. The statutory power of eminent domain is not to be extended by inference, or implication. (*Rens. & Sara. R. R. Co.* v. *Davis, supra.*)

The plaintiff claims that the power may be found in subdivision 3 of section 7, of the Railroad Law; which reads, " where it shall require any further rights to lands or the use, of lands for switches, turnouts, or for filling any structures of its road, or for constructing, widening or completing any of its embankments or roadbeds, by means of which greater safety or permanency may be secured, and such lands shall be contiguous to such railroad and reasonably accessible to the place where the same are to be used for such purpose or purposes." This language read with its ordinary significance, and with regard to the subject-matter, fails to suggest the idea of so broad a power being conferred. There is not a fact found, nor is there any evidence, showing that the purpose of the plaintiff is to build what is commonly understood as a " switch," or a " turnout," merely. Undoubtedly, the new line, or way, planned over the defendants' land, would have to be connected with the main line by a " switch," and, perhaps, a " turnout " and that is all that relates to them. Within the allegations and the testimony, the land was not required for a switch, or turnout. It was wanted for the projection of its main line over a new and straighter way. The allega-

tion of the petition is that plaintiff has laid out upon the map filed by it "a route for the two additional main tracks to be used for the purposes of its incorporation and to accommodate its business * * * upon a different alignment from that followed by its present main tracks," etc.    The finding of the referee is to the same effect and the testimony of the chief engineer of the plaintiff was that "the intention of the Erie Railroad Company is to build only two additional tracks upon the changed alignment and to retain on the existing main tracks the two that are there. * * * There will exist through the village one main road on two different lines." Nor is the land of the defendants contiguous to the railroad of the plaintiff, as the section contemplates.    That the plaintiff may have acquired land extending from its road, on either end of the curve, so as to touch the defendants' land, does not make it contiguous to the railroad.    The contiguity, intended by the section, more reasonably, means that the land sought to be taken is adjacent to the railroad itself.    Whether this may be a sufficient ground of objection, by itself, or not, it is of some importance in the construction of the statute.    It is argued that the words, in the middle of subdivision 4 of section 7, " or for any other purposes necessary for the operation of such railroad," are available to the plaintiff, as conferring authority to take land for the construction of additional tracks, whether switch tracks or main tracks.    This subdivision relates to the acquisition of real property, where the corporation " shall require any further right to lands, or to the use of lands for the flow of water occasioned by railroad embankments or structures now in use, or hereafter rendered necessary, *or for any other purpose necessary for the operation of such railroad,* or for any right to take and convey water from any spring * * * to such railroad, for the uses and purposes thereof, together with the right to build, or lay aqueducts or pipes for the purpose of conveying such water," etc.    The maxim "*noscitur a sociis*" applies and limits the general meaning of the words found, and relied upon, in the clause.    From the con-

text, the main object seems to be to provide for the cases where the corporation requires the use of lands for the flowage of waters, or for their conveyance for railroad uses or protection. If a more general meaning could, properly, or reasonably, attach to them, it would relate to what was necessary for the operation of the railroad; that is, the railroad as it was located and built under its charter. It would be contrary to reason to extend their reference to such railroad project, additional to the existing railroad, as the corporation might deem advantageous.

It is argued that section 13 of the Railroad Law affords authority. The provisions of this section relate to an alteration, or a change, of the route, or any part of the route, of the road of a railroad corporation, or of its termini, and prescribe the conditions and limitations, under which such change may be made. It is expressly provided that "no alteration of the route of any railroad after its construction shall be made, or new line or route of road laid out or established, as provided in this section, in any city or village unless approved by a vote of two-thirds of the common council of the city or trustees of the village." In this case, the approval of the village trustees has not been obtained to the plan proposed by the plaintiff's directors. While insisting that an alteration, or change of route, is not necessarily involved, the plaintiff says that the statutory provision is applicable and that it may proceed without being obliged to first secure the approval of the village trustees. In this construction I am unable to agree. The language of the statute is mandatory that "no alteration of the route * * shall be made * * * unless approved," etc. That is very different from the case cited, of *Matter of N. Y. C. & H. R. R. R. Co.* (77 N. Y. 248). That was a proceeding under the act of 1850 to acquire real estate, under sections 13 and 14, adjoining its railway for tracks, switches and sidings for freight facilities and subdivision 5 of section 28 provided that nothing in the act should be construed as authorizing the construction of any railroad in the streets of a city without its assent. The decision was that the gen-

eral authority of the statute, under which the railroad company was seeking to acquire the tract of land in question, should not be deemed to extend to a use of the city streets for a railroad, unless the assent of the city was obtained. (See *Matter of Rochester Elec. Ry. Co.*, 123 N. Y. 351–360.) The plain and express purpose of this section was to empower the railroad company to alter, or to change any part of its route; that is, to substitute another route in whole, or in part, for the existing one. It would be unjust to the landowner to hold that the corporation could proceed under that section and burden his title with a proceeding to take his land for a new line, or route, through the village, without showing compliance with a condition, without which the plan would be abortive. (*Matter of Rochester Elec. Ry. Co.*, 361, *supra*.) It seems from these considerations that, if the plaintiff proposes to change, or alter, that part of the route of its road in Goshen, it is not yet in a position to do so, while the assent of the village trustees is withheld. If its purpose is not that, then the statutory provision is inapplicable to the case.

I find in none of the provisions referred to, of the Railroad Law, a delegation of the power to condemn the defendants' land for the purpose set forth and proven, except it be in section 13 and a strict compliance with its provisions is essential to the valid exercise of the power. While a statute, which authorizes the taking of private property, *in invitum* the owner, should be strictly construed, as being in derogation of the common-law rights of ownership, I concede that the construction should not be over technical and that this case is one where the project may be of advantage to the public traffic, and of benefit to the railroad corporation. But, however the facts may appeal to us, in my opinion, there would be no justification in law for our holding that the plaintiff is entitled by the statutes of this state to execute its present purpose. It may enlarge, and improve, its track accommodations upon its present line of road within the provisions of the statute; but to do what is now proposed, it lacks legislative authority, unless proceeding under section 13, with the

approval of the village trustees. If that approval be secured, the plaintiff will, then, be in a position to execute its proposed plan of the new line through Goshen and, consequently, to take the necessary land for that purpose by right of eminent domain.

In connection with the forcible reasoning of Mr. Justice JENKS, speaking for the Appellate Division, enough has been said to show that the plaintiff was not entitled to a decree condemning the defendants' lands and, therefore, I advise an affirmance of the judgment and order appealed from and that judgment absolute be entered on the stipulation, dismissing the proceeding, with costs.

PARKER, Ch. J., O'BRIEN, MARTIN, VANN, CULLEN and WERNER, JJ., concur.

Ordered accordingly.