THE LONG ISLAND RAILROAD COMPANY, Appellant, *v.*
JAMES K. O. SHERWOOD et al., Respondents.

Railroads — condemnation proceedings — acquisition of land
for additional tracks and branches — when railroad not required
to take statutory steps for change of route in order to maintain
proceedings to acquire such land.

1. Former decisions which were based upon the absence of legis-
lative power have become obsolete by amendments to the Railroad
Law (L. 1905, ch. 727; Consol. Laws, ch. 49) expressly giving to rail-
road companies the right to acquire additional lands by condemna-
tion for main tracks, branches, etc., outside of that previously
acquired for its right of way. Hence the construction of the stat-
ute, as it then existed, in *Erie R. R. Co.* v. *Steward* (170 N. Y. 172)
is no longer controlling.

2. The appellant, a railroad company, seeks to acquire lands about
one hundred feet in width lying between its two branches and which
abut upon its right of way on both. It does not seek the lands for
the purpose of changing its route but to maintain it as at present
and to improve it by additional tracks and by the construction of
an overhead crossing. The changing of the location of the tracks is
incidental to the improvement and the lands now sought to be
acquired are necessary by reason of such additional tracks and of
the change of grade. *Held*, that it is not necessary to take the
statutory proceedings to effect a change of route in order to main-
tain proceedings to acquire title to such lands.

*Long Island R. R. Co.* v. *Sherwood*, 147 App. Div. 895, reversed.

(Argued January 12, 1912; decided March 19, 1912.)

1

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 5, 1911, affirming a judgment in favor of defendants entered upon a decision of the court on trial at Special Term.

The nature of the proceeding and the facts, so far as material, are stated in the opinion.

*Morgan J. O'Brien, Louis J. Carruthers* and *Joseph F. Keany* for appellant. The plaintiff had full authority to institute this proceeding. (Cons. Laws, ch. 49, §§ 8, 17; *N. Y. C. & H. R. R. R. Co.* v. *Untermyer,* 133 App. Div. 146.) There was no change of route within the meaning of the Railroad Law, and compliance with the provisions thereof relative to a change of route was not necessary. (1 Lewis on Em. Domain [3d ed.], § 402; 2 Elliott on Railroads, § 930; *Matter of N. Y. C. & H. R. R. R. Co.,* 77 N. Y. 248.) Necessity was fully established. (*Arnot* v. *Salt Co.,* 186 N. Y. 501; *Le Gendre* v. *S., U. & N. Ins. Co.,* 183 N. Y. 392; *Matter of N. Y. & H. R. R. Co.* v. *Kipp,* 46 N. Y. 546; *Matter of B. & A. R. R. Co.,* 53 N. Y. 574; *Schmitz* v. *Union Elevated R. R. Co.,* 21 N. Y. S. R. 424; *Matter of N. Y. C. & H. R. R. R. Co.* v. *Metropolitan Gas Light Co.,* 63 N. Y. 326.)

*Augustus Van Wyck* for respondents. Appellant has failed to prove any statutory authority to take the property involved herein. (*Matter of Long Island R. R. Co.,* 189 N. Y. 428; *Matter of Poughkeepsie Bridge,* 108 N. Y. 483; *Matter of N. F. & W. R. R. Co.,* 108 N. Y. 375; *City of Brooklyn* v. *L. I. R. R. Co.,* 72 App. Div. 496; *Matter of N. Y. D. R. R. Co.,* 107 N. Y. 42.) Appellant's plans provide for, and it thereby intends to alter and change the route, not only of its main line proper, but that of the Montauk and Atlantic avenue roads. (*Matter of N. Y. C. & H. R. R. R. Co,* 136 App. Div. 756; *People ex rel. Bacon* v. *N. C. R. R. Co.,*

164 N. Y. 289; *Matter of T. U. T. R. Co.*, 116 App. Div. 56; *Matter of G. & J. Ry. Co.* v. *G. & S. R. R. Co.*, 172 N. Y. 462; *Webb* v. *F. S. S., etc., Ry. Co.*, 52 Misc. Rep. 50.) Compliance with the provisions of section 24 of the Railroad Law were conditions precedent to the right to maintain this proceeding. (*Matter of Riverhead, G. & S. R. R. Co.*, 36 App. Div. 514; *Matter of R. E. Co.*, 123 N. Y. 351; *Erie R. R. Co.* v. *Steward*, 170 N. Y. 172.) Appellant has failed to prove necessity. (*Rensselaer* v. *Davis*, 43 N. Y. 141; *Stillwater* v. *Slade*, 36 App. Div. 587.)

HAIGHT, J. The Long Island Railroad Company has instituted the proceedings in question for the purpose of condemning the real estate of the respondents and acquiring title thereto for the purpose of enabling it to construct a railroad crossing over Van Wyck avenue in the city of New York. The company is a corporation existing under the general railroad laws of this state and has heretofore constructed and operated a railroad through Long Island. Just before its road crosses Van Wyck avenue it separates into two branches; one proceeding on through the new tunnel of the Pennsylvania railroad at Thirty-fourth street and the other forking off to the south into the borough of Brooklyn. The two branches upon the western side of Van Wyck avenue are ninety feet and nine and one-half inches apart. The land, the title of which the corporation seeks to acquire, is located between the two branches on the western side of the avenue. The plans of the railroad company adopted by its board of directors call for the construction of a viaduct over Van Wyck avenue two stories in height upon steel pillars in the center of the avenue and upon the curbs and sidewalks thereof and the moving of the company's railroad tracks upon such bridge or structure. The bridge is designed to carry thirteen tracks over Van Wyck avenue, so arranged by a double deck that the

tracks thereon will not cross each other at the same grade. Van Wyck avenue was crossed at grade by seven tracks, two of them being Atlantic division tracks, two Montauk division tracks, two main line tracks and one, the most southerly of all, which is used for carrying empty trains to and from Flatbush avenue station. The avenue is a very heavily traveled highway and is protected at its intersection with the company's railroad by four crossing gates and the plans, when completed, will eliminate the grade crossing and enable the company to nearly double its number of tracks across the highway.

The plans, as we have seen, involve the raising of the railroad tracks as they approach the avenue on either side in order to pass over the street. Inasmuch as some of the tracks cross over the bridge at the second story, the embankment for some of the tracks necessarily will have to be of the same height as that story. On the east of Van Wyck avenue a new transfer station has been adopted by the corporation and it, with the necessary yards, is now approaching completion. The design on the part of the company is to operate its trains from that station into the city and under the East river by electricity instead of steam. The bulk of the traffic takes place in the hours when the people are going to business and when they are returning to their homes, and during those hours trains run across Van Wyck avenue on less than five minutes headway, and some of the trains travel at a speed of sixty miles an hour. The crossing of Van Wyck avenue at grade is, therefore, very dangerous, and the company has already constructed a portion of the bridge and put the same in operation, which carries the two westbound main line tracks over the avenue.

The trial court, however, has held as a conclusion of law that the removal of the main tracks up on to the bridge proposed to be constructed operates as a change of route, and it has found as a fact that the statutory proceedings necessary to effect a change of route have not

been taken, and, consequently, it has found as a fact that it was not *actually* necessary that the company should be permitted to acquire the lands of the respondents. These findings and conclusions are duly excepted to by the railroad company, and they present the question that is to be determined upon this review.

The findings that the taking of the lands was not actually necessary for the purposes of the company apparently are based upon the determination that there was a change of route, and it may be conceded that the question of necessity could not be determined until the route is located. The fundamental question, therefore, is as to whether there is such a change of route contemplated as to require proceedings to be taken under the statute to locate the new route. Upon this question the trial court has found as facts that the railroad will traverse the same section and serve the same localities after its Jamaica improvement plans are carried out as before, and that the plans do not contemplate the removal of the company's railroad or of any part thereof into any other section of the borough of Queens, nor do they contemplate furnishing any different locality with railroad service. It is, therefore, apparent that the only change contemplated is the placing of the tracks now crossing the avenue at grade upon the bridge to be constructed and the embankments approaching the same with the new main tracks made necessary by the opening of the new tunnel under the East river, and that the change is made necessary in the elimination of the grade crossing. In other words, the raising of the railroad tracks so as to cross over the avenue is the purpose of the improvement, and the changing of the location of the tracks is incidental to the construction of such improvement.

I am not disposed to question the cases upon which the respondents rely as being a correct construction of the statute at the time the decisions were made. They were fully considered in the case of *Erie R. R. Co.* v. *Steward,*

commonly known as the *Goshen Case* (170 N. Y. 172). Under the statute as it then existed a railroad company, having located its route and acquired its right of way, was bound thereby, and it could not go outside and acquire other real estate, except in the cases provided for by the statute; and inasmuch as it sought to acquire lands for a cutoff for the purpose of running its freight trains through the sparsely-settled district of the village, saving about three miles in length, it was held that there was no statutory authority therefor, and, consequently, the lands could not be taken by proceedings in condemnation. But after this decision the legislature, by chapter 727 of the Laws of 1905, section 2, saw fit to amend section 7 of the Railroad Law (L. 1890, ch, 565, as amd. L. 1892, ch. 676) so as to read as follows:

"All real property, required by any railroad corporation for the purpose of its incorporation *or for any purpose stated in the railroad law,* shall be deemed to be required for a public use, *and may be acquired by such corporation.* If the corporation is unable to agree for the purchase of any such real property, or of any right, interest or easement therein, required for any *such* purpose, or if the owner thereof shall be incapable of selling the same, or if after diligent search and inquiry the name and residence of *any* such owner cannot be ascertained, it shall have the right to acquire title thereto by condemnation. *Every railroad corporation shall have the power from time to time to make and use upon or in connection with any railroad either owned or operated by it, such additions, betterments and facilities as may be necessary or convenient for the better management, maintenance or operation of any such railroad, and shall have the right by purchase or by condemnation, to acquire any real property required therefor, and it shall also have the right of condemnation in the following additional cases:*

"1. Where title to real property has been acquired, or

attempted to be acquired, and has been found to be invalid or defective.

"2. Where its railroad shall be lawfully in possession of a lessee, mortgagee, trustee or receiver, and additional real property shall be required for the purpose of running or operating such railroad.

"3. Where it shall require *for any railroad owned or operated by it* any further rights to lands or the use of lands *for additional main tracks or for branches, sidings,* switches, or turn-outs *or for connections or for cut-offs or for shortening or straightening or improving the line or grade of its road or any part thereof. Also where it shall require any further rights to lands or the use of lands* for filling any structures of its road, or for constructing, widening or completing any of its embankments or road-beds, by means of which greater safety or permanency may be secured, and such lands shall be contiguous to such railroad and reasonably accessible."

I have italicized the new provisions so that the change made in the statute from that which previously existed may readily be seen; and it thus appears that, prior to the amendment, the statute made provisions for the acquiring of lands for a railroad right of way by a new road that was being constructed, and that it was given the right to go outside of its right of way for the purpose of obtaining lands for switches or turnouts, and for the purpose of constructing its embankments and roadbeds, but at that time no statutory right existed for the purpose of acquiring lands for betterments, for additional main tracks, branches, sidings or for connections, cutoffs, shortening or straightening or improving the line or grade of the road or of any part thereof. But all of these provisions are now embraced in the new statute, which also gives to every existing railroad corporation the power from time to time to make and use upon or in connection with any railroad either owned or operated by it such additions, betterments and facilities as will be

necessary or convenient for the better management, maintenance or operation of any such railroad, and shall have the right of purchase or condemnation to acquire any real property required therefor, and it shall also have the right of condemnation for additional main tracks, or branches, sidings, switches, or turnouts, or for connections or for cutoffs, or for shortening or straightening or improving the line or grade of its road or any part thereof; and also where it shall require any further rights to lands or the use thereof for filling any structures of its road or for constructing or widening or completing any of its embankments. This statute was carried into the Consolidated Laws unchanged and is now incorporated in the new revision of the Railroad Law of 1910 (Ch. 481) as section 17 (Cons. Laws, ch. 49) with some changes, but none of which are material to the question now under consideration.

Under the former statute a railroad corporation after locating its route in the manner provided by the statute, was given the right to acquire a right of way six rods wide, either by purchase or by condemnation. This was deemed ample for the purposes of the corporation, except in cases of switches or turnouts or where lands were required for the constructing of embankments, etc., and it was accordingly held that where a railroad company had located its route and acquired its right of way it was bound thereby, and that it could not go outside of its right of way and acquire other lands except in cases specifically authorized by the statute. But owing to the marvelous growth of many of our cities and the great increase in travel and in the transportation of freight it became necessary that railroads, in order to safely and properly comply with the increased public demands, should have additional facilities, tracks, etc., in order to properly discharge their duties to the public. The legislature, recognizing the necessity for further facilities, by the act of 1905 gave to existing railroad corporations further powers with reference to the acquiring of lands

for additions, betterments and facilities, such as may be necessary and for additional main tracks or branches, sidings or connections, or for cutoffs or for shortening or straightening or improving the line or grade of its road or any part thereof.    This statute has rendered obsolete some of the former decisions of this court, which were based upon the absence of legislative power, which has now been supplied by expressly giving the right to acquire additional lands, either by purchase or condemnation, for main tracks, branches, etc., outside of that previously acquired for its right of way.    This statute is not designed to change any route or right of way.    Its purpose is to empower the acquiring of additional lands to be used, in connection with that which it has already acquired, for the purpose of additional betterments and facilities necessary in the management, maintenance and operation of the railroad. Originally a single-track road was ample to supply the public demands; then in some localities it became necessary to have a double-track road; then four tracks, and now the time has arrived in some localities in which many more tracks are required, and it may be in the near future in some localities that it will be necessary to have separate tracks for different classes of trains.    It may become necessary to have tracks for local trains stopping at each station each way, and other tracks for other trains of high speed.    In some cases it may be necessary owing to the number of trains to have still other tracks in order to supply the demand for transportation.    In the case under consideration we are advised by the findings that during some portions of the day trains are dispatched over the road every five minutes running at a speed of sixty miles an hour.    In case of an accident to a train, there is scarcely time to warn an approaching train and prevent its plunging into that which has met with the accident.    The remedy for this is more tracks, which will enable trains to be dispatched on other tracks and giving more time between trains.

The lands which the Long Island Railroad Company seek to acquire are lands abutting upon its present right of way. It is in fact between the right of way of its two branches at the point in question. It does not seek any change of route. It wishes to maintain its present route and right of way, some of which must be occupied by its embankments in order to afford approaches to its overhead crossing of Van Wyck avenue. What it does seek are lands for its additional main tracks, for its construction of its overhead crossing of the avenue, and for the change of its grade, rendered necessary by such crossing. The elimination of grade crossings of highways has now become the policy of the state, as is apparent from other portions of the statute passed in recent years. And under the amended provisions of the statute of 1905, referred to, it appears to me that express legislative authority is now given to the railroad corporation to carry out its contemplated improvement at the crossing of Van Wyck avenue, and to acquire by condemnation the lands necessary therefor without changing its present route or routes.

Attention has been called to the case of *People ex rel. Bacon* v. *Northern C. Ry. Co.* (164 N. Y. 289). In that case the railroad company had maintained a bridge over a highway for many years and had constructed a new bridge thirty-five feet distant from the old bridge upon two stone abutments which projected into the traveled portion of the highway eight feet or more on either side thereof. This encroachment was held to be a public nuisance and the trial court directed the jury to find a verdict that the defendant had unnecessarily, by the construction of the abutments, impaired the usefulness of the highway and that a peremptory writ of mandamus issue commanding the defendant to restore the highway to such condition as would not impair its usefulness, etc. No question arose with reference to change of route nor was any adjudication made thereon, and it does not

appear to me that this decision has any bearing upon the question under consideration.

In proceedings for the condemnation of lands the owner always has the right to interpose an answer raising an issue as to whether it is necessary that the lands should be taken for a public use. Such an issue was raised in this case.

In the case of *N. Y. C. & H. R. R. R. Co.* v. *Untermyer* (133 App. Div. 146, 150) WOODWARD, J., in delivering the unanimous opinion of the court, says: "An additional track to care for the local business of the Grand Central Station, running out thirty-five miles, is not an abuse of the power conferred; it is such a branch as the statute fairly authorizes. * * * It is in harmony with the provisions of chapter 727 of the Laws of 1905, * * * which specially provides for taking lands under the conditions here under consideration." This case was affirmed without opinion. (196 N. Y. 531.)

I am, therefore, of the opinion that the court erred in refusing to find, at the request of the company, as a conclusion of law, that "the plaintiff's plans do not contemplate such a change of route as is referred to in old section 13 (new section 24) of the Railroad Law," and that the findings of fact made by the court upon the question of necessity are apparently based upon its erroneous understanding as to what constitutes a change of route.

The judgment of the Appellate Division and that of the Special Term should be reversed, with costs to abide the event, and a new trial ordered, in which the issue of necessity should be determined.

VANN, J. (dissenting). In order to carry out an extensive plan to improve its railroad system at Jamaica the plaintiff sought by this proceeding to acquire certain lands of the defendants by condemnation. The three lines operated by the plaintiff, one owned and the others leased, converge but do not meet or coincide at Jamaica, which

is within the city of New York, each being constructed upon its own right of way extending continuously from its own separate and independent terminus at one end of its line to its own separate and independent terminus at the other. The lines extend east and west the entire length of Long Island with many branches. The land in question is bounded on the north by the main line of the plaintiff, on the east by Van Wyck avenue, on the south by the Montauk line of the plaintiff and on the west by other lands. The Atlantic division line adjoins the Montauk line on the south and each of the three lines has several tracks on its own right of way. The proposed plan involves the removal of all the tracks of the Montauk line and of the Atlantic division line bodily from their present rights of way and the location thereof on new rights of way over the lands of the defendants sought to be condemned for that purpose. It also involves the removal of part of the tracks of the main line from its present right of way and the location thereof on said land. Notwithstanding such removal of the tracks the lands of the three lines constituting their present rights of way will not be abandoned, but will continue to be used for railroad purposes such as the slope of a huge embankment required by the proposed plan and in other ways. They will not, however, be occupied by tracks and trains of cars will not be run over them in the operation of the respective roads. The change in the location of the tracks from the present right of way to the proposed right of way extends for several thousand feet both east and west of the land in question and creates a new line of travel for over a mile.

The plan also involves the construction of additional main tracks, but they are not to rest on the surface of the ground. They will be raised in the air over the present main tracks when moved on to the land in question and will constitute an elevated railroad, supported by columns. The new tracks will not be elevated over the

old while in their present position, and not until after they have been removed respectively to the north and south and placed on the land now belonging to the defendants. The old tracks will not cross Van Wyck avenue where they now cross, but at an entirely different point and under very different circumstances, while the new tracks will be in the air over them like a second story resting on posts. No track, new or old, will rest on or be raised over the land where the main tracks now rest, nor within the lines of the present right of way as adopted many years ago and used for time out of mind.

If this change involves a change of route the plaintiff concedes that the proceeding was properly dismissed, because the preliminary steps required by statute in order to change a route had not been taken. It claims, however, that the proposed change is not a change of route but a re-arrangement of tracks, and that it has power to make the same without complying with those provisions of the statute relied on by the defendants. The primary question involved is, what does the statute mean by a change of route ? This involves the question, what is the route of a railroad according to the Railroad Law as it stood when this proceeding was begun ?

Section 4 of that act confers power on the corporation " to cause the necessary examination and survey for its proposed railroad to be made for the selection of the most advantageous route; " to acquire by grant or condemnation the real estate necessary to construct and maintain its road; " to lay out its road not exceeding six rods in width, and to construct the same; and, for the purpose of cuttings and embankments, to take such additional lands as may be necessary for the proper construction and security of the road."

Section 6, entitled " Location of route," requires the corporation " before constructing any part of its road in any county named in its certificate of incorporation, or instituting any proceedings for the condemnation of real

property therein," to "make a map and profile of the route adopted by it in such county," and "file it in the office of the clerk of the county in which the road is to be made * * *;" to "give written notice to all actual occupants of the lands over which the route of the road is so designated, which has not been purchased by or given to it. * * * Any such occupant or the owner * * * may, within fifteen days after receiving such notice, give ten days' written notice to such corporation and to the owners or occupants of lands to be affected by any proposed alteration, of the time and place of an application to a justice of the Supreme Court * * * for the appointment of commissioners to examine the route," stating in the petition the objection to the route designated and designating "the route to which it is proposed to alter the same," and furnishing a survey, map and profile thereof. Upon the hearing commissioners may be appointed to examine the two routes and they may adopt either, "as may be consistent with the just rights of all parties and the public, including the owners or occupants of lands upon the proposed alteration." Provision is made for an appeal, and, on the hearing thereof, "the court may affirm the route proposed by the corporation or may adopt that proposed by the petitioner."

Section 7, as recently amended, provides, among other things, that "every railroad corporation shall have the power from time to time to make and use upon or in connection with any railroad either owned or operated by it, such additions, betterments and facilities as may be necessary or convenient for the better management, maintenance or operation of any such railroad, and shall have the right by purchase or by condemnation, to acquire any real property required therefor," or "for additional main tracks or for branches, sidings, switches, or turnouts or for connections or for cutoffs or for shortening or straightening or improving the line or grade of its road or any part thereof. Also where it shall require any

further rights to lands or the use of lands for filling any structures of its road, or for constructing, widening or completing any of its embankments or roadbeds, by means of which greater safety or permanency may be secured, and such lands shall be contiguous to such railroad and reasonably accessible."

Section 13, entitled "change of route, grade or terminus," provides that "Every railroad corporation, except elevated railway corporations, may, by a vote of two-thirds of all its directors, alter or change the route or any part of the route of its road or its termini, or locate such route, or any part thereof, or its termini, in a county adjoining any county named in its certificate of incorporation, if it shall appear to them that the line can be improved thereby, upon making and filing in the clerk's office of the proper county a survey, map and certificate of such alteration or change.    *    *    *    No alteration of the route of any railroad after its construction shall be made, or new line or route of road laid out or established, as provided in this section, in any city or village, unless approved by a vote of two-thirds of the common council of the city or trustees of the village.    *    *    *"    Provision is also made for a change of the grade of any part of its road by a vote of the directors.   Neither this section nor section 6 was changed when section 7 was so amended as to provide for additional main tracks.

According to section 4 the corporation may select the route which it deems "the most advantageous," lay out its road not exceeding six rods in width *thereon,* construct the same *as thus laid out,* acquire the real estate needed *for that purpose,* and if "additional lands" are necessary for "proper construction and security," to acquire these also.   This seems to confine the route to the strip of land on which the road is laid out and built.

Section 6 definitely locates the route by the map thereof as filed and confines it to said strip by the requirement of notice to the "occupants of the land over which the

route of the road is " designated on the map.    This is
confirmed by the procedure required in order to change
the route, for notice must be given not only to the cor-
poration but also " to the owners or occupants of land to be
affected by any proposed alteration."    A primary object is
the protection of the landowner, whether he owns lands
on the route selected or on the route proposed.    While the
owner of abutting land, no part of whose property is
covered by the route, is not entitled to notice, written notice
must be given to all "occupants of the lands over which the
route " is designated on the map in the one case, and "to
the owners or occupants of lands to be affected by any
proposed alteration " in the other.    The action of the
commissioners must be consistent with the rights of all
parties, including by express mention the owners of lands
on " the proposed alteration."    As the defendants could
not object when the route was first laid out because no
part of their land was taken, unless they can be heard
now they never can be heard at all upon the subject.
Unless the route is substantially coterminous with the
strip selected, where is the service of notice to end and
why should not abutting owners be notified ?    If the route
is wider than the strip, notice must be served on all the
occupants of lands over which the route passes, yet the
settled practice of over half a century has never required
notice to any landowner outside of the strip.    No owner of
land without the strip can secure a change of route, for
the right to apply therefor is given only " to such occu-
pant or owner," that is, to the occupant or owner " of *the*
land over which the route of the road is so designated."
According to the statute as thus practically construed
the route is limited to the strip and by the strip, and no
change of route " or any part thereof " can be effected
indirectly, or except as provided by section 13.    Hence
the route is the right of way as originally acquired for
the construction of the road and upon which the road
was built.    It is the land to which the easement of rail-

road operation attached upon the completion of the railway. Within that strip of land tracks may be laid and changed at will, but while there may be floating tracks there can be no floating route.

In a case which received careful consideration (*Erie Railroad Co.* v. *Steward*, 170 N. Y. 172) the facts were that the Erie Railroad Company entered and left the village of Goshen upon a long and irregular curve of somewhat more than three miles in length. The grade was undulating and auxiliary engines had to be used to haul trains over the distance at great expense to the company. In order to obviate this and to have two additional tracks as a part of the main line upon which freight trains could be moved with greater facility the company filed a map and laid out a new line of something less than three miles in length over the lands of the defendants and others, which began at a point on the main line west of the village of Goshen and proceeded in very nearly a straight line to a point upon the main line east of the village. The plan proposed was to retain the main line and construct a new line through the village. One of the questions was whether this involved a change of route and in deciding it Judge GRAY said: "When the company had located its line of road between its terminal points, pursuant to the requirement of its charter, it was concluded by that location and no change of its route could thereafter be made, in the absence of legislative authority. The effect of the designation by the directors of the line of the road was the same as if the line had been described in the charter and the operation by the corporation of a railway limited thereto. (*Hudson & Delaware Canal Co.* v. *N. Y. & Erie R. R. Co.*, 9 Paige, 323, 328; *Mason* v. *Brooklyn City & N. R R. Co.*, 35 Barb. 373, 381; *Matter of Poughkeepsie Bridge Co.*, 108 N. Y. 483; Wood on Railroads, § 271.) It was with reference to the construction of the line, or way, as, and when, designated by the directors, that the power of

2

eminent domain was delegated to the corporation, to be exercised in the acquisition of private lands and that power, once exercised was, necessarily, exhausted." (p. 179.) After reciting the provisions of the Railroad Law, relied upon in that case as well as in this, the judge continued: "That a change of a part of the route, by a diversion of the tracks of a main line over a 'short cut' across another part of the village, is within the general powers conferred upon the corporation, I do not believe. The statutory power of eminent domain is not to be extended by inference, or implication. (*Rensselaer & Saratoga R. R. Co.* v. *Davis,* 43 N. Y. 137.)" After holding that the land was not needed for switches, turnouts, filling structures, constructing, widening or completing any of its embankments or roadbed or the like, but "for the projection of its main line over a new and straighter way," we further said: "While insisting that an alteration, or change of route, is not necessarily involved, the plaintiff says that the statutory provision is applicable and that it may proceed without being obliged to first secure the approval of the village trustees. In this construction I am unable to agree. The language of the statute is mandatory that 'no alteration of the route  *  *  *  shall be made *  *  *  unless approved,' etc. That is very different from the case cited, of *Matter of N. Y. C. & H. R. R. R. Co.* (77 N. Y. 248)  *  *  *  It would be unjust to the landowner to hold that the corporation could proceed *  *  *  and burden his title with a proceeding to take his land for a new line, or route, through the village, without showing compliance with the condition, without which the plan would be abortive. (*Matter of Rochester Electric Ry. Co.,* 123 N. Y. 351, 360.)"

While in that case the line was to be split in two and for nearly three miles one of the tracks was to be built on new land, in this case the lines of two railroads are to be moved bodily and a third line partially from their present and original rights of way for a distance of more

than a mile on to new land which never formed part of those rights of way.

It is true, as stated in the prevailing opinion, that the statute now permits land to be taken for additional main tracks, but according to the plan proposed the additional main tracks are not to rest on the surface of the ground. No new land is needed for tracks, as substantially no additional space laterally will be used and the trial court found and had a right to find that the land in question was not needed for additional main tracks. Why is more land needed for additional tracks, when such tracks will not be laid on the land? Whether the change of route is the main purpose of the plan, or merely incidental thereto, as an actual change of route is necessarily involved, it cannot be lawfully made without complying with the statute.

The case of *People ex rel. Bacon* v. *Northern Central Ry. Co.* (164 N. Y. 289) arose under section 11 of the Railroad Law relating to the crossing of highways by railroads. It is somewhat analogous because the question was whether the removal of the railroad track thirty-five feet to the westward and the crossing of the highway at another point and by a different method of constructing a bridge and its abutments, could be made without application to the court under that section. In deciding the case we said: "If the defendant could make the change, to which reference has been made, without the order of the court, it might have just as well removed its route and crossing thirty-five hundred feet to the westward instead of thirty-five feet, if it had served its purpose so to do." (p. 301.) This indicates that a change of route cannot be made without complying with the statute because the change is but slight. The change proposed in the case now before us is for a greater distance laterally and much greater lengthwise than in the case cited. (See, also, *Matter of Poughkeepsie Bridge Co.*, 108 N. Y. 483; *Matter of Greenwich & Johnsonville Ry. Co.* v. *Greenwich & Schuylerville El. Railroad*, 172 N. Y. 462.)

The elementary works lay down the same rule, but not with absolute uniformity, owing to a difference in the statutes of the various states. Governor Baldwin, in his valuable work on American Railroad Law, says: "The power to make a location is governed by the rule that a power of location once exercised is exhausted. Unless, therefore, there is some legal provision to the contrary, after the directors have made and published a location, they cannot alter it by substituting another. * * * Courts cannot alter a railroad location in any collateral proceedings." (p. 64, citing authorities.)

"Once located, a railroad is permanently located for the whole term of its existence, subject only to the exceptions of a specially granted express legislative enactment, authorizing a change or relocation." (2 Elliott on Railroads, § 930.)

"In some of the states it is held that before its road is constructed (the railroad) may, where the statute warrants it, change its location at discretion even after it has been fixed by it, but in no case, after the road is constructed, where such change involves the exercise of the right of eminent domain, and as a rule, after location is filed as required by law." (2 Wood on Railroads, § 271.)

In the *Untermyer* case, in which we wrote no opinion, there was special power conferred by the act consolidating the New York Central Railroad Company and the Hudson River Railroad Company into a single corporation. I do not regard that case as analogous. (*N. Y. C. & H. R. R. Co.* v. *Untermyer*, 133 App. Div. 146; 196 N. Y. 531.)

The learned counsel for the appellant contends that there is no change of route so long as the road traverses the same section, serves the same locality and there is no decided deviation from the constructed line of the road. If this is true what becomes of the protection so carefully provided for the landowner? What becomes of those provisions which we have quoted from the Railroad Law requiring notice to be given to him upon the original

location of the route and notice to be given by him when
any change of route is proposed? Upon whom are notices
to be served unless the map and right of way define the
route? The whole subject would be in the air and so
unsettled as to leave nearly everything to the discretion
of the railroad corporation, with nothing to protect the
landowner. Private land could be invaded at will and
the route would be substantially where the company at
any time wished to place it. I do not so read the statute.
When such care is taken to prescribe in great detail the
method of changing a route, " or any part thereof," and
provision is made that the decision of the question shall be
consistent with the rights of the public, the owners of the
land over which the old route passes and the owners of
the land over which the new route may pass, I do not
think the route can be changed by indirection through
resort to provisions of the statute which have no rela-
tion to the subject of route or a change thereof but
apply solely to additional main tracks, embankments,
betterments and the like. Indeed, the petition of the
plaintiff and the facts found exclude those provisions
as not within the intention of the plaintiff in pro-
posing its plan. The trial court found not only that
the plaintiff has enough land already upon which to con-
struct an adequate station at Jamaica, but also enough
to construct two additional tracks for the purpose of
increasing and bettering its express service and facilities;
that the lands in question " are not actually necessary
for the purpose of eliminating the grade crossing at
Van Wyck avenue of plaintiff's" three lines, " as the
same are now constructed." It expressly found that the
land in question is not needed " for additional main tracks
or for branches, sidings, switches or turnouts, or con-
nections, or for shortening or straightening, or improving
the line or grade of plaintiff's road or roads, or any part
thereof; " nor " for filling any structures of plaintiff's
roads, or for constructing, widening or completing any

of its embankments or roadbeds as the same are now constructed, by means of which greater safety or permanency may be secured." It did not find as a conclusion of law that the plan operates as a change of route, but found as a fact "that plaintiff's plans provide for, and plaintiff thereby intends to change or alter its line or route" upon the land in question, and that this is its sole purpose. The conclusions of law are silent upon the subject of change of route. Any one who carefully reads the record and examines the numerous maps, will find that the findings above alluded to are amply supported by evidence. The rule in cases of condemnation requires not a liberal but a strict construction of the statute. As was said by Judge WILLARD BARTLETT in a late case: "The stringent character of the power of eminent domain demands that the methods of procedure prescribed for its exercise shall be strictly if not inflexibly followed." (*Bell Telephone Co.* v. *Parker*, 187 N. Y. 299, 303.)

The plans, which form part of the record, show that the plaintiff intends to erect a solid embankment nearly three miles long through the city of New York at the locality in question; to cross Van Wyck avenue at new points, not only changing the grade of the avenue but obstructing it to a serious extent, and, aside from the change of route, to make other changes of a radical character in which the municipality and its citizens have a deep interest. Even if the plaintiff had the statutory power to practically change its route by constructing additional main tracks, at the least, it was within the sound discretion of the courts below to require it to obtain the consent of the proper municipal authorities to the proposed plan before allowing the lands of the defendants to be condemned. While it has been held that where different steps must be taken to effect an ultimate purpose and there is no rule of law providing which step shall be taken first, the courts may allow them to be taken in any order that the actor sees fit, still it is within the discretion of

the court to require a particular order to be observed in order to prevent annoyance and hardship. In other words, the plaintiff has no right in any event to take this land unless the improvement is made and the improvement cannot be made without municipal consent. That consent may never be granted, and hence the courts may say, as the courts below have said, that the landowners shall not be disturbed until such consent has been obtained. The land may never be needed. In *Erie Railroad Company* v. *Steward* (*supra*) it was held that the provision of law was mandatory and that the change of route through a village could not be made or a new route laid out and land acquired for the purpose, unless such change was *first* approved by a two-thirds vote of the trustees. In *Matter of Rochester Electric Railway Company* (*supra*) it was held that the consent of the highway commissioners to the construction of a railroad in a public street was an essential *prerequisite* to the maintenance of a proceeding to condemn land abutting on the highway. In both of these cases *Matter of New York Central & Hudson River Railroad Company* (77 N. Y. 248) was distinguished if not overruled in this respect. (See, also, *Matter of Kings Co. Elev. R. R. Co.*, 105 N. Y. 97.) The same rule applies to a city and with greater force, owing to the magnitude of the interests involved.

I think that the facts found by the trial court have the support of evidence to such an extent as to prevent interference by us after affirmance by the Appellate Division, and that those facts and the law applicable thereto required that the petition of the plaintiff should be dismissed. I, therefore, vote to affirm the order appealed from.

CULLEN, Ch. J., WERNER, CHASE and COLLIN, JJ., concur with HAIGHT, J.; WILLARD BARTLETT, J., concurs with VANN, J.

Judgment reversed, etc.